## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **URIEL SEPULVEDA ALICEA**<br><br>Plaintiff<br><br>**v.**<br><br>**MUNICIPALITY OF YAUCO; MUNICIPALITY OF SALINAS; LUIS A. VELEZ CRUZ; QLANTRO LLC; B.V. PROPERTIES INC.; EL MESON DE FELIPE, INC.; SUPERMERCADO MR. SPECIAL, INC.; VIKTOR POLLO, LLC; SUPERMERCADO NAPO VELEZ CASH & CARRY INC.; SUPERMERCADO AGUEYBANA, INC.; WILLIES BAR AND RESTAURANT LLC; FLOR AMELIA INC.; RMFS CORPORATION; A SALIR, INC.; WV DESTINATION PR LLC**<br><br>Defendants | **CIVIL NO.** |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

The plaintiff, Uriel Sepulveda Alicea, respectfully requests a Permanent Injunction against Municipality of Yauco and Municipality of Salinas in accordance with the Title II of the *Americans with Disabilities Act*, as well as damages and a permanent injunction under Section 504 of the Rehabilitation Act, 29 U.S.C, and, moreover, also requests a permanent injunction against Luis A. Velez Cruz; Qlantro LLC; B.V. Properties Inc.; El Meson De Felipe, Inc.; Supermercado Mr. Special, Inc.; Viktor Pollo, LLC; Supermercado Napo Velez Cash & Carry Inc.; Supermercado Agueybana, Inc.; Willies Bar And Restaurant LLC; Flor Amelia

Inc.; RMFS Corporation; A Salir, Inc.; WV Destination PR LLC  in accordance with Title III of the *Americans with Disabilities Act.*

## I.    INTRODUCTION

1.    This lawsuit emerges from the systemic discrimination that has transformed the streets, sidewalks, and businesses of Yauco and Salinas into treacherous obstacle courses for Uriel Sepulveda Alicea and other citizens with disabilities. Mr. Sepulveda, who relies on a walker for mobility due to multiple debilitating musculoskeletal conditions—including a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis—brings this action to challenge the persistent and deliberate failures of the Municipalities of Yauco and Salinas and numerous businesses to ensure accessibility in public spaces and commercial establishments. These failures constitute flagrant violations of Titles II and III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the fundamental principles of equal access that these laws embody.

2.    The barriers encountered by Mr. Sepulveda are not isolated incidents but represent a pervasive pattern of non-compliance that plagues both municipalities. Cracked sidewalks, missing or deteriorated curb ramps, illegal parking that obstructs pedestrian pathways, and businesses operating with inaccessible entrances, excessively high counters, and unusable restrooms have created an environment of exclusion that systematically denies Mr. Sepulveda his right to participate fully in community life.

3.    The defendant businesses—from local restaurants like El Punto de Efi and Qlantro to larger establishments like Yauco Plaza Shopping Centers and supermarkets—share a pattern of discrimination characterized by architectural barriers that Mr. Sepulveda has personally encountered and documented. These barriers include unstable surfaces that

make navigation with a walker hazardous, steps without alternative ramps, narrow pathways that restrict movement, and inaccessible restroom facilities that lack proper support bars and clearance. Such obstacles force Mr. Sepulveda to exert excessive physical effort that worsens his pain, risk his safety by navigating hazardous terrain, or abandon his visits altogether.

4. Most egregiously, the Municipalities of Yauco and Salinas have systematically granted and maintained use permits for businesses that flagrantly violate accessibility requirements. These permits were obtained through false or incomplete information regarding compliance with accessibility laws—a practice that has enabled discrimination to flourish under the guise of legitimate business operation. The municipalities' failure to conduct proper inspections or enforce accessibility standards through their permitting authority demonstrates deliberate indifference to the rights of disabled citizens.

5. The discrimination faced by Mr. Sepulveda is not occasional but continuous and pervasive. His ability to participate in fundamental aspects of community life—accessing businesses, enjoying restaurants, utilizing public sidewalks, or simply traveling from one place to another—has been systematically compromised by the defendants' failures. Each painful step across broken pavement, each business he cannot enter independently, and each service counter too high to reach reinforces the daily message that these communities were not designed with him in mind.

6. This lawsuit seeks not only to remedy specific barriers but to address the systematic exclusion that permeates Yauco's and Salinas' approach to accessibility. The relief sought—structural modifications to remove barriers, revocation of fraudulently obtained permits, and the implementation of proper oversight mechanisms—is necessary to ensure

that these municipalities become communities where all citizens, regardless of disability status, can fully participate in public life as guaranteed by federal law.

## II.    PARTIES

7.    The Plaintiff Uriel Sepulveda Alicea is a frequent visitor of the Municipalities of Yauco and Salinas.

8.    The defendant, the Municipality of Yauco, is a municipal entity with the capacity to sue and be sued. At all times relevant to this cause of action, it supervised, operated, or owned the sidewalks and streets on Yauco. Additionally, the Municipality of Yauco is a defendant as it is the public entity that issued use permits to the corporate co-defendants in this Complaint, despite the fact that they do not maintain accessible facilities on their respective properties, for the reasons described in Section C.

9.    The following co-defendants represent the businesses they own, lease, rent, or operate, located on Yauco, and other areas within the Municipality of Yauco:

9.1.    Luis A. Velez Cruz is the owner, lessor, lessee, and/or operator of the public accommodation known as Cafeteria y Barra El Punto de Efi.

9.2.    Qlantro LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Qlantro.

9.3.    B.V. Properties Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Yauco Plaza I Shopping Center and Yauco Plaza II Shopping Center.

9.4.    El Meson De Felipe, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as El Meson Sandwiches Yauco Plaza.

9.5.    Supermercado Mr. Special, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Supermercado Mr. Special Yauco Plaza II and Mr. Special Yauco (Barbosa).

9.6.    Viktor Pollo, LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Viktor Pollo.

9.7.    Supermercado Napo Velez Cash & Carry Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Supermercado Napo Velez Yauco.

9.8.    Supermercado Agueybana, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Supermercado Econo Yauco.

9.9.    Willies Bar And Restaurant LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Willie's Bar & Restaurant.

9.10.    Flor Amelia Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Dolce Salao.

4.    The defendant, the Municipality of Salinas, is a municipal entity with the capacity to sue and be sued. At all times relevant to this cause of action, it supervised, operated, or owned the sidewalks and streets on Salinas. Additionally, the Municipality of Salinas is a defendant as it is the public entity that issued use permits to the corporate co-defendants in this Complaint, despite the fact that they do not maintain accessible facilities on their respective properties, for the reasons described in Section D.

5.    The following co-defendants represent the businesses they own, lease, rent, or operate, located on Salinas, and other areas within the Municipality of Salinas:

5.1.  RMFS Corporation is the owner, lessor, lessee, and/or operator of the public accommodation known as Mojito Grill And Sports Bar.

5.2.  A Salir, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Restaurante El Dorado.

5.3.  WV Destination Pr LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Full Moon restaurant in Hotel Vista Bahia.

### III.    ALLEGATIONS

**A. Regarding the Plaintiff's Medical Conditions**

6.  Mr. Uriel Sepúlveda suffers from multiple debilitating musculoskeletal conditions, including a damaged disc in his lumbar spine, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis affecting his spine and sacroiliac joints. These conditions significantly impair his mobility and physical function compared to the average person in the general population.

7.  Due to his lumbar disc damage and bilateral radiculopathy, Mr. Sepúlveda experiences severe and persistent pain, as well as nerve-related weakness in his lower extremities. These impairments make it extremely difficult for him to walk even short distances without experiencing discomfort or requiring assistance. His ability to maintain balance and stability is also compromised, increasing his risk of falls and further injuries.

8.  Additionally, his osteoporosis and chronic osteoarthritis contribute to spinal rigidity, joint degeneration, and increased susceptibility to fractures. These conditions severely limit his capacity to perform fundamental movements such as bending, twisting, or lifting objects, even those of minimal weight. Everyday activities, including climbing stairs, standing for extended periods, or sitting without adequate lumbar support, become exceedingly painful and physically taxing for him.

9.   To mitigate these challenges, Mr. Sepúlveda relies on a walker for mobility, which provides him with essential support and stability. However, even with this assistive device, navigating environments that lack accessibility features, such as ramps, level pathways, and properly designed seating areas, remains a significant obstacle to his independence and quality of life.

**B. Concerning the sidewalks, sidewalk ramps, the properties in question, and the Court's jurisdiction**

10.  The areas within the Municipality of Yauco and the establishments in controversy, where Mr. Uriel has been unable to access due to barriers, are the following:

10.1.   El Punto de Efi located at Highway 127, Km 2.7, Yauco, PR 00698-0000 with coordinates 18.035763911245148, -66.83266606003818.

10.1.1.   The sidewalk in question is located in front of Cafeteria y Barra El Punto de Efi located at Highway 127, Km 2.7, Yauco, PR 00698-0000 with coordinates 18.035763911245148, -66.83266606003818.

10.2.   The location in controversy is a place of public accommodation, known as Qlantro located at Boulevard 100 Jimmy Torres, Suite 15, Yauco, PR 00698-0000 with coordinates 18.0237305160179, -66.85476946188801.

10.2.1.   The sidewalk in question is located in front of  Qlantro located at Boulevard 100 Jimmy Torres, Suite 15, Yauco, PR 00698-0000 with coordinates 18.0237305160179, -66.85476946188801.

10.3.   The location in controversy is a place of public accommodation, known as Yauco Plaza I Shopping Center located Highway 2, Intersection with Highway 128, Yauco, PR 00698-0000 with coordinates 18.025291817049947, -66.85587962927225.

10.3.1. The sidewalk in question is located around Yauco Plaza I Shopping Center located Highway 2, Intersection with Highway 128, Yauco, PR 00698-0000 with coordinates 18.025291817049947, -66.85587962927225.

10.3.2. The sidewalk ramps in question is located around Yauco Plaza I Shopping Center located Highway 2, Intersection with Highway 128, Yauco, PR 00698-0000 with coordinates 18.025291817049947, -66.85587962927225.

10.3.3. The location in controversy is a place of public accommodation, known as El Meson Sandwiches Yauco Plaza located at Highway 2, Intersection with Highway 128, Local 2, Yauco Plaza I, Yauco, PR 00698-0000 with coordinates 18.0237305160179, -66.85476946188801.

10.4. The location in controversy is a place of public accommodation, known as Yauco Plaza II Shopping Center located at 1 & 11 Hwy 128, km 0.5, Yauco, PR 00698-0000 with coordinates 18.027122513252817, -66.85202218910283.

10.4.1. The sidewalk in question is located in front of Yauco Plaza II Shopping Center located at 1 & 11 Hwy 128, km 0.5, Yauco, PR 00698-0000 with coordinates 18.027122513252817, -66.85202218910283.

10.4.2. The location in controversy is a place of public accommodation, known as Supermercado Mr. Special Yauco Plaza located at 1 & 11 Hwy 128, km 0.5 Yauco Plaza, Yauco, PR 00698-0000 with coordinates 18.02701652609136, -66.8520380205832.

10.4.3. The location in controversy is a place of public accommodation, known as Viktor Pollo 1 & 11 Hwy 128, km 0.5, Yauco, PR 00698-0000 with coordinates 18.02792899307245, -66.85274647163192.

10.5. The location in controversy is a place of public accommodation, known as Supermercado Napo Velez Yauco located at 25 De Julio Prolongation Street 135, Yauco, PR 00698-0000 with coordinates 18.026694495956797, -66.86128062715548.

10.6. The location in question is a place of public accommodation known as Supermercado Econo Yauco, located at Paseo Del Cafe # 48, Yauco, PR 00698-3621, with coordinates 18.034962913652816, -66.85117397116413.

10.6.1. The sidewalk in question is located in front of Supermercado Econo Yauco, situated at Paseo Del Cafe # 48, Yauco, PR 00698-3621, with coordinates 18.034962913652816, -66.85117397116413.

10.7. The location in question is a place of public accommodation known as Supermercado Mr. Special Yauco (Barbosa), located at Barbosa Street Corner of Planta, Yauco, PR 00698-3928, with coordinates 18.030602515802943, -66.84807235844563.

10.7.1. The sidewalk in question is located in front of Supermercado Mr. Special Yauco (Barbosa), situated at Barbosa Street Corner of Planta, Yauco, PR 00698-3928, with coordinates 18.030602515802943, -66.84807235844563.

10.8. The location in question is a place of public accommodation known as Willie's Bar & Restaurant, located at Highway 371 Km 2.2 Almacigo Bajo, Yauco, PR 00698-0000, with coordinates 18.050484054772614, -66.86746786705686.

    10.8.1.1. The sidewalk in question is located in front of Willie's Bar & Restaurant, and it is situated at Highway 371 Km 2.2 Almacigo Bajo, Yauco, PR 00698-0000, with coordinates 18.050484054772614, -66.86746786705686.

10.9. The location in question is a place of public accommodation known as Dolce Salao, located at 26 Street Mattei Lluberas, Yauco, PR 00698-0000, with coordinates 18.035793445378367, -66.8479140871986.

    10.9.1.1. The sidewalk in question is located in front of Dolce Salao, and it is situated at 26 Street Mattei Lluberas, Yauco, PR 00698-0000, with coordinates 18.035793445378367, -66.8479140871986.

11. The areas within the Municipality of Salinas and the establishments in controversy, where Mr. Uriel has been unable to access due to barriers, are the following:

11.1. The location in question is a place of public accommodation known as Mojito Grill And Sports Bar, located at Selectos Plaza, Local C, Salinas, PR, 00751-0000, with coordinates 17.97247612927307, -66.29206870488336.

    11.1.1.1. The sidewalk in question is located in front of Mojito Grill And Sports Bar, and it is situated at Selectos Plaza, Local C, Salinas, PR, 00751-0000, with coordinates 17.972536177880336, -66.29235132068946.

11.1.1.2.    The sidewalk ramps in question are located at the following coordinates: 17.972345176469602, -66.2924233751893 and 17.972752113472172, -66.29225037270676.

11.2.    The location in question is a place of public accommodation known as Restaurante El Dorado, located at Marlin St., Playa Salinas Nbhd., Salinas, PR, 00751-0000, with coordinates 17.962243349513106, -66.29547202663466.

11.2.1.1.    The sidewalk in question is located in front of Restaurante El Dorado, and it is situated at Marlin St., Playa Salinas Nbhd., Salinas, PR, 00751-0000, with coordinates 17.96224497900176, -66.29546997320807.

11.3.    The location in question is a place of public accommodation known as the Full Moon restaurant situated in the  Hotel Vista Bahia located at Main Street, Parcel A-296, Sector Playita, Salinas, PR 00751-0000, with coordinates 17.958540492231897, -66.28812748140824.

11.3.1.    The sidewalk in question is located in front of Hotel Vista Bahia located at Main Street, Parcel A-296, Sector Playita, Salinas, PR 00751-0000, with coordinates 17.958540492231897, -66.28812748140824.

**C. Discrimination in Municipality of Yauco and other businesses against Mr. Uriel Sepulveda due to his disability**

12.    Yauco has become one of Mr. Sepúlveda's preferred destinations because it offers a variety of restaurants, shopping centers, and commercial establishments that allow him to enjoy a fulfilling experience. He appreciates that Yauco provides a space where he can access multiple businesses in a single location, making it easier for him to run errands, shop for necessities, and indulge in meals from his favorite restaurants. For him, these

outings are not just about practicality but also about finding moments of relaxation and enjoyment despite the daily challenges he faces due to his mobility impairments.

13.    One of the aspects he enjoys the most about Yauco is its diverse selection of restaurants, where he can savor well-prepared meals in a comfortable setting. He particularly enjoys visiting establishments like El Mesón Sandwiches, where he appreciates the fast service and the quality of the food. He also values the convenience of Mr. Special, a supermarket where he can find a wide variety of products. Additionally, he frequently dines at Viktor Pollo, where he can enjoy delicious meals at an affordable price. The presence of shopping centers like Yauco Plaza further enhances his visits, as they offer him the opportunity to access different stores and services in one place.

14.    However, despite his enthusiasm for visiting Yauco, he has encountered significant barriers that often turn his experiences into a source of frustration. The poor condition of the sidewalks in various parts of the town makes it difficult and unsafe for him to walk with his walker. Cracks, uneven pavement, and obstructions on the sidewalks force him to exert extra effort to move around, which increases his physical discomfort and fatigue. Even when he manages to reach certain establishments, he frequently encounters entrances that are not accessible, with steps that prevent him from entering without assistance.

15.    Inside businesses, he faces additional challenges that further limit his ability to enjoy his visits. Many restaurants have high service counters that make it difficult for him to place an order or interact comfortably with staff. Narrow aisles and inadequate restroom facilities create further obstacles, making it nearly impossible for him to navigate some spaces safely. The deteriorated parking areas in many parts of Yauco add yet another

layer of difficulty, as they create unstable surfaces that make it challenging for him to move with his walker.

16. While Yauco offers him numerous opportunities for entertainment, shopping, and dining, these persistent accessibility issues significantly affect his ability to enjoy the town to the fullest. Instead of experiencing a smooth and pleasant visit, he often finds himself struggling with barriers that limit his independence and force him to constantly adapt to an environment that does not accommodate his needs.

17. Mr. Sepúlveda feels discouraged from visiting several places located in Yauco because he knows he cannot enjoy them due to the architectural barriers present at those locations:

### *Responsibility of the Municipality of Yauco and  Luis A. Velez Cruz Cafeteria y Barra El Punto de Efi*

18. Mr. Uriel Sepúlveda enjoys good food and places where he can share a good time, which is why he has visited Cafeteria y Barra El Punto de Efi in December 2024, January, and February of 2025. He knows that this place offers an excellent variety of rice, meats, and root vegetables, with delicious, thick, and flavorful beans. He also loves fried foods, which he considers the best and reasonably priced. For him, it is an excellent option for buying lunch at midday, with a great selection of rice, grains, and side dishes. Additionally, he appreciates that the establishment offers alcoholic beverages and a variety of mojitos. However, during his last visit on February 28, 2025, he was affected by the architectural barriers of the place, which made access difficult. On top of that, he experienced discriminatory treatment from the staff, which negatively impacted his experience and makes him feel dissuaded from returning to the establishment.

19. He wants to return to the place within the next three months because he enjoys the quality of the food, the variety of dishes, and the social atmosphere. However, the architectural

barriers and the treatment he receives make him feel dissuaded from doing so. The barriers he is aware of are the following:

19.1.    Sidewalk Barriers: Mr. Uriel encountered significant obstacles while navigating the sidewalks in front of Cafeteria y Barra El Punto de Efi. The deteriorated pavement, filled with cracks and uneven surfaces, made walking with his walker difficult and exhausting. Additionally, parked vehicles blocked his path, forcing him to step onto the street to continue. These conditions created a frustrating and unsafe experience for him, discouraging his return to the cafeteria.

19.1.1.    Mr. Uriel personally identified the poor condition of the sidewalks, which made walking with his walker an exhausting and painful task. The cracks and uneven surfaces forced him to lift and adjust his walker repeatedly, straining his already fragile lumbar region and aggravating the pain caused by his osteoarthritis. Every small obstacle became a challenge, requiring him to move slowly and cautiously to avoid losing balance. The constant jarring movements sent sharp pain through his lower back, making each step an ordeal. Because of this, he feels discouraged from returning to the cafeteria.

19.1.2.    As he approached the cafeteria, Mr. Uriel encountered parked vehicles blocking the sidewalks, leaving him no choice but to step onto the street to move forward. Navigating over the curb and onto the uneven ground was extremely difficult with his walker, putting excessive strain on his lumbar spine and sacroiliac joints. The awkward movements required to maneuver around the vehicles caused him discomfort, and each misstep sent pain

radiating down his legs due to his cervical and lumbar radiculopathy. The instability of walking in these conditions made him feel unsafe and vulnerable. Because of this, he feels dissuaded from visiting the establishment again.

19.1.3.    The municipality of Yauco, as the entity responsible for maintaining and regulating public spaces, has failed to address the deteriorated condition of the sidewalks and the obstruction caused by parked vehicles in front of Cafetería y Barra El Punto de Efi. Cracks, uneven surfaces, and irregular pavement pose a constant risk to Mr. Uriel's mobility, while the lack of enforcement against illegal parking forces him to take unsafe alternative routes. This inaction has severely limited his ability to move freely and safely, compromising his right to accessible public spaces. Moreover, by allowing these barriers to persist, the municipality is subjecting Mr. Uriel to a discriminatory and exclusionary situation that restricts his ability to navigate his surroundings with dignity and independence.

19.2.    High Counter: Mr. Uriel personally faced difficulties with the excessively high counter, which stood at approximately six feet tall. Due to his osteoporosis and limited mobility, he could not lean forward comfortably or lift his arms high enough to interact with the staff or see the items displayed. This forced him to rely on verbal descriptions instead of being able to choose freely, making the ordering process frustrating and disempowering. Straining to look up at the counter caused tension in his cervical spine, intensifying the discomfort he

already experiences from his radiculopathy. Because of this, he feels discouraged from returning to the cafeteria.

19.3.    Gravel Parking Lot: Upon arriving, Mr. Uriel immediately noticed that the parking lot was covered in loose gravel, making it extremely difficult for him to move with his walker. The small stones shifted under his weight, causing his walker to sink slightly, requiring him to exert extra effort to push forward. Each step felt unstable, and he had to grip his walker tightly to maintain his balance, putting additional pressure on his already weakened wrists and shoulders. The lack of firm ground forced him to take short, hesitant steps, increasing the strain on his lumbar spine and sacroiliac joints. By the time he reached the entrance, he was already fatigued and in pain. Because of this, he feels dissuaded from visiting the restaurant again.

19.4.    Tables with Rear Support Bar: Looking for a place to sit, Mr. Uriel attempted to settle at a table but quickly realized that the rear support bar prevented him from comfortably positioning his legs. With his limited mobility and chronic osteoarthritis, adjusting his posture was essential to avoiding prolonged discomfort, but the restrictive design of the table forced him into an awkward position. His sacroiliac joints and lower back became increasingly sore as he remained seated, making it difficult for him to enjoy his meal. Shifting his legs required additional effort, causing pain to radiate from his lumbar region. Because of this, he feels discouraged from returning to the establishment.

19.5.    High Display Case: Mr. Uriel personally experienced difficulties with the excessively high display case, which prevented him from clearly seeing the

available food options. With his osteoporosis and chronic pain, bending forward to get a better view was not an option, and the height of the display case made it impossible for him to make a selection without assistance. This left him feeling frustrated and dependent on others, which limited his ability to order independently. The strain of tilting his head back for prolonged periods caused discomfort in his cervical spine, making the experience even more unpleasant. Because of this, he feels dissuaded from visiting the cafeteria again.

19.6.    High Bar Stools: When considering a seat, Mr. Uriel quickly realized that the bar stools were far too high for him to use. Due to his osteoarthritis and lumbar issues, lifting himself onto a tall stool was not only painful but also risky, as his limited mobility prevented him from stabilizing himself once seated. His walker offered no support in such a position, making it an unsafe option. Since no lower seating was available nearby, he was left with no comfortable place to sit, forcing him to either stand for longer than his body could handle or leave without staying. Because of this, he feels discouraged from returning to the establishment.

19.7.    Intimidation and Forced Deletion of Photos: Furthermore, during his visit on February 28, Mr. Uriel personally experienced a deeply distressing act of intimidation when he was confronted and coerced into deleting the photos he had taken of the barriers he encountered. The aggressive manner in which he was pressured left him feeling humiliated, defenseless, and completely disregarded. He was not only denied the right to document the struggles he faced due to his mobility limitations but was also treated with hostility, as if he had done something wrong for simply trying to make visible the difficulties he endured.

This blatant act of discrimination compounded his emotional distress, making him feel unwelcome and unsafe. The psychological impact of this incident has weighed heavily on him, as he was singled out, intimidated, and silenced for no reason other than attempting to advocate for himself. Because of this, he feels deeply dissuaded from ever returning to the establishment.

19.8.   The barriers at Cafetería y Barra El Punto de Efi could be eliminated by implementing specific and practical measures. The deteriorated sidewalks should be repaired to provide a smooth and stable surface, and parked vehicles obstructing pedestrian access must be prevented through proper signage and enforcement. The high counter and display case can be lowered, or an accessible section should be added to allow Mr. Uriel to interact comfortably without unnecessary strain. The gravel parking lot should be replaced with a firm, even surface to facilitate safe movement with his walker. Tables must be redesigned or modified to remove obstructive rear support bars, ensuring he can sit without discomfort. Lower seating options should be incorporated alongside the high bar stools so he has a suitable place to sit. Additionally, the establishment must ensure that Mr. Uriel is treated with respect and dignity by training staff on inclusion and non-discrimination, preventing any future acts of intimidation. Clear policies should be established to guarantee that he is not pressured into deleting personal documentation of his experiences. These improvements would allow him to visit the establishment without facing unnecessary physical and emotional difficulties.

19.9.   Similarly, the Municipality of Yauco has disregarded its responsibility to uphold accessibility standards, allowing Cafetería y Barra El Punto de Efi to function in a

way that limits access for people with disabilities. By approving permits without ensuring the existence of an accessible entrance or an unobstructed route, the Municipality has directly impacted Mr. Uriel's ability to visit the establishment. Therefore, this negligence perpetuates exclusion and denies him the right to enjoy the space on equal terms with other patrons.

### *Responsibility of the Municipality of Yauco and  Qlantro LLC*
### *Qlantro*

20. Mr. Uriel has enjoyed the food and atmosphere at Qlantro, a restaurant known for its fast service and friendly staff. He appreciates that the waiters are attentive and that the place has a family-friendly environment, in addition to offering reasonable prices. He knows about delicious dishes such as shrimp risotto with veal chop and red snapper fillet with shrimp in creole sauce, as well as its renowned sangria. He has visited the restaurant in October, November, and December of 2024. During these visits, he has faced architectural barriers that make access difficult. On his last visit on February 28, 2025, when he orders a pumpkin cream soup and a bottle of water, he struggles with these barriers again, making his experience challenging. This situation has dissuaded him from returning to the establishment.

21. He wants to return to the place within the next four months because he enjoys the quality of the food, the attentive service, and the welcoming atmosphere. However, the architectural barriers make him feel dissuaded from doing so. The barriers he is aware of are the following:

21.1. Deteriorated Sidewalk: Mr. Uriel personally identified the poor condition of the sidewalk, which made walking with his walker extremely difficult. The cracks and uneven pavement caused his walker to shake and get stuck, forcing him to

exert extra effort to move forward. Each sudden jolt sent sharp pain through his lumbar spine, aggravating his radiculopathy and osteoarthritis. The instability of the surface required him to be extra cautious, making his progress slow and exhausting. Because of this, he feels discouraged from returning to the restaurant.

21.1.1.    The deteriorated condition of the sidewalks in front of Qlantro restaurant has created serious difficulties for Mr. Uriel's movement, endangering his safety and limiting his autonomy. Deep cracks, uneven surfaces, and damaged sections have turned this area into a barrier to his mobility, preventing him from moving freely. As the entity responsible for maintaining and improving public infrastructure, the municipality of Yauco has the duty to ensure that sidewalks are safe and accessible for everyone. However, its lack of action has allowed these deficiencies to persist, affecting Mr. Uriel's right to navigate without obstacles and to access this establishment.

21.2.    Damaged Accessible Parking Area: Upon arriving, Mr. Uriel encountered the designated accessible parking area in a deteriorated state, with uneven pavement that made it difficult for him to maneuver his walker safely. The rough surface caused instability, requiring him to exert additional strength to push forward, increasing the strain on his lower back and sacroiliac joints. Each step was painful, as he struggled to maintain balance on the irregular terrain. Because of this, he feels dissuaded from visiting the establishment again.

21.3.    Lack of Vertical Signage in Accessible Parking: Mr. Uriel personally noticed that the accessible parking area lacked vertical signage with the universal disability

symbol, making it difficult to identify and increasing the likelihood of unauthorized vehicles occupying the space. As a result, he had to spend additional time looking for a suitable parking spot, prolonging the discomfort caused by his mobility limitations. The unnecessary delay left him physically strained before even entering the establishment. Because of this, he feels discouraged from returning to the restaurant.

21.4.    Uneven Parking Area: As he exited his vehicle, Mr. Uriel faced the challenge of an uneven parking surface, which made it difficult to use his walker safely. The difference in levels caused his walker to tilt unexpectedly, forcing him to adjust his grip constantly to avoid losing balance. The strain on his arms and back increased with every unstable step, intensifying his lumbar pain and making movement exhausting. Because of this, he feels dissuaded from visiting the establishment again.

21.5.    Deteriorated Access Ramp from the Parking Area: Mr. Uriel personally struggled with the deteriorated access ramp from the parking area, which had worn-out paint and irregular pavement. As he attempted to ascend, the lack of a smooth surface caused his walker to jerk and become unstable. The extra force needed to keep control placed significant pressure on his wrists and lower back, worsening his discomfort. Every small uneven patch became an obstacle, making the ascent slow and painful. Because of this, he feels discouraged from returning to the restaurant.

21.6.    No Accessible Route from the Parking Area: After parking, Mr. Uriel realized that there was no clear accessible route from the parking lot to the entrance. He had to

navigate through an unpredictable path, dealing with uneven surfaces that made it difficult to push his walker. The lack of a designated route forced him to take detours, adding unnecessary effort and strain to his already painful movements. Because of this, he feels dissuaded from visiting the establishment again.

21.7.    Entrance Step: Mr. Uriel personally struggled with a step at the main entrance, which made entering the establishment extremely difficult. Lifting his walker over the obstacle required additional effort, causing sharp pain in his lumbar region. The sudden movement also aggravated his cervical radiculopathy, making his arms feel weak and unstable. The struggle to enter left him physically drained before he could even sit down. Because of this, he feels discouraged from returning to the restaurant.

21.8.    Entrance Mat: As he attempted to enter, Mr. Uriel encountered a mat at the entrance that made moving his walker more difficult. The mat bunched up under the wheels, creating resistance and forcing him to use additional strength to keep moving. The extra effort strained his wrists and lower back, making each push painful. The struggle with such a minor detail added to his overall frustration and discomfort. Because of this, he feels dissuaded from visiting the establishment again.

21.9.    High Front Counter: Upon reaching the counter in front of the entrance, Mr. Uriel immediately faced difficulties due to its excessive height. He was unable to comfortably see over it or interact with the staff without straining his neck. Tilting his head back to communicate caused discomfort in his cervical spine, increasing the pain from his radiculopathy. The inability to engage easily made the

experience frustrating and disempowering. Because of this, he feels discouraged from returning to the restaurant.

21.10.  Tables with Black Support Bars: As he attempted to sit, Mr. Uriel found that the tables had black support bars underneath, which blocked his ability to position his legs comfortably. Due to his osteoarthritis and lumbar issues, he struggled to adjust his posture, resulting in increased pain and discomfort throughout his meal. The restrictive design forced him into an unnatural position, making it difficult for him to sit for an extended period. Because of this, he feels dissuaded from visiting the establishment again.

21.11.  Table Arrangement Blocking Circulation: Moving through the restaurant, Mr. Uriel struggled with the table arrangement, which made navigation with his walker challenging. The narrow spaces required him to make tight turns, increasing strain on his wrists and back. Each difficult maneuver heightened his pain, and he had to be extra cautious to avoid hitting furniture. The lack of space made it exhausting for him to reach a table comfortably. Because of this, he feels discouraged from returning to the restaurant.

21.12.  High Black Counter-Bar: Approaching the black counter-bar, Mr. Uriel immediately noticed that it was too high for him to use comfortably. Standing to interact with the staff placed strain on his lower back, and the height made it impossible for him to rest his arms properly. He was unable to use this area without discomfort, forcing him to seek an alternative that did not exist. Because of this, he feels dissuaded from visiting the establishment again.

21.13.    Tall Black Bar Stools: When looking for a place to sit, Mr. Uriel realized that the black bar stools were too tall for him to use. His osteoarthritis and lumbar pain prevented him from safely climbing onto them, and there were no lower seating options available nearby. Unable to find a suitable place to sit, he was left standing longer than his body could handle, worsening his pain. Because of this, he feels discouraged from returning to the restaurant.

21.14.    Small Restroom: Upon entering the restroom, Mr. Uriel immediately struggled with the lack of space. The cramped layout made it difficult for him to move with his walker, forcing him to maneuver in an extremely tight area. The limited space increased his discomfort and made every movement painful and exhausting. Because of this, he feels dissuaded from visiting the establishment again.

21.15.    Obstructed Toilet Area: Mr. Uriel personally experienced difficulties using the toilet, as the trash bin, which is white and located on the right side, created an obstacle that restricted his movement, preventing him from properly positioning himself close to the toilet. Positioning himself properly required awkward and painful adjustments, placing strain on his sacroiliac joints. The struggle to use the facilities safely added unnecessary discomfort to his visit. Because of this, he feels discouraged from returning to the restaurant.

21.16.    Inadequate Grab Bars: While attempting to use the restroom, Mr. Uriel found that the lateral grab bar, which is gray and located on the left side, was short and situated too far, further limiting his ability to use the support effectively. Additionally, the toilet paper dispenser, which is black, was positioned below the grab bar, creating difficulty in accessing it.the grab. The distance and placement

of the grab bar created a situation where Mr. Uriel can not properly reach and grip it, hindering his ability to maintain balance and safely maneuver within the restroom. This made it extremely difficult for him to use them for support, forcing him to rely on his own strength, which aggravated his lumbar pain. The lack of proper support made the experience physically exhausting and unsafe. Because of this, he feels dissuaded from visiting the establishment again.

21.17.    Blocked Sink Access: When trying to wash his hands, Mr. Uriel noticed that the trash bin, which is gray and located on the right side, obstructed access to the sink. He had to position himself awkwardly, placing strain on his back and shoulders to reach the faucet. The unnecessary difficulty added to his frustration and discomfort. Because of this, he feels discouraged from returning to the restaurant.

21.18.    High and Obstructed Towel Dispenser: After washing his hands, Mr. Uriel attempted to use the towel dispenser but found it was placed too high and partially blocked by the sink. The dispenser, which is black, is located above the sink on the right side, making it difficult for him to reach and use it comfortably. Reaching for it required an uncomfortable stretch that worsened his cervical and lumbar pain. The poorly positioned dispenser made this simple task unnecessarily difficult. Because of this, he feels dissuaded from visiting the establishment again.

21.19.    The barriers at Qlantro could be eliminated by repairing the deteriorated sidewalk to create a smooth and even surface, ensuring that the pavement does not cause instability when walking with a walker. The accessible parking area should be resurfaced to remove irregularities, and a vertical sign with the universal disability

symbol must be installed to ensure proper identification. The parking area must also be leveled to prevent difficulties in movement. The access ramp should be repaired, eliminating uneven surfaces and repainting it for better visibility. A designated accessible route from the parking area to the entrance must be established, ensuring a direct and obstacle-free path. The step at the main entrance should be removed or replaced with a smooth transition to facilitate entry, and the entrance mat must be secured or replaced with a non-slip surface to prevent difficulties when using a walker. The high front counter and the black counter-bar should be lowered to allow for comfortable interaction without unnecessary strain. Tables with obstructive support bars must be replaced with accessible designs, and the arrangement of tables should be modified to ensure adequate space for safe and comfortable movement. Lower seating options must be available to replace the excessively tall black bar stools. The restroom must be expanded or reorganized to allow for sufficient space to maneuver with a walker. The toilet area must be cleared of obstructions by repositioning the trash bin to ensure accessibility. Grab bars should be installed at the correct height and distance, free from obstructions, to provide proper support. The sink must be easily accessible without any obstacles, and the towel dispenser should be repositioned at a lower height and away from blockages. Implementing these changes can significantly improve accessibility and eliminate the barriers currently present in the establishment.

21.20.   As a result of the Municipality of Yauco's failure to enforce accessibility regulations, Restaurante Qlantro operates without the necessary accommodations

for individuals with disabilities. By issuing permits to a business that lacks an accessible entrance and does not guarantee barrier-free access, the Municipality has directly contributed to Mr. Uriel's exclusion. Consequently, this lack of enforcement not only prevents him from accessing the establishment but also reinforces a sense of inequality and discrimination.

### *Responsibility of the Municipality of Yauco; B.V. Properties Inc. - Yauco Plaza I Shopping Center and El Meson De Felipe, Inc. - El Meson Sandwiches Yauco Plaza*

22. Mr. Uriel Sepúlveda enjoys visiting Yauco Plaza Shopping Center because it is a place where he can find everything in one location. He appreciates the variety of stores, from special occasion clothing to casual wear and beach accessories. He also values the diverse dining options, with restaurants like McDonald's and El Meson Sandwiches, perfect for taking a break and enjoying a good meal. Additionally, he finds it convenient that the shopping center has a free parking area, making his visit easier. He has been to the location in December of 2024 and January and February of 2025, During these visits, he has encountered architectural barriers that make access difficult. On his last visit, on February 28, 2025, he encountered architectural barriers again that made access difficult, making his experience challenging, for that he feels dissuaded from returning.

23. He wants to visit the shopping center within the next two months because he appreciates the variety of stores, the dining options, and the convenience of having everything in one place. He enjoys browsing for clothing, especially when looking for items for special occasions and casual outings. The diverse selection of restaurants allows him to choose from different meal options depending on his cravings, making each visit enjoyable. Additionally, he values the accessibility of free parking, which makes his trips more convenient. Visiting Yauco Plaza I Shopping Center is also an opportunity for him to

spend in a comfortable environment. However, the architectural barriers make him feel dissuaded from doing so. The barriers he is aware of are the following:

23.1.    Sidewalk and Ramp Barriers: Mr. Uriel encountered significant obstacles while navigating the sidewalks and ramps located around  Yauco Plaza I Shopping Center located at 137 Yauco Plaza I Shopping Center, Yauco, Puerto Rico 00968-0000 with coordinates 18.025291817049947, -66.8558796292722. The damaged sidewalks, filled with cracks and uneven surfaces, made walking with his walker unstable and physically exhausting. Similarly, the deteriorated ramps with cracks and worn-out areas added to the difficulty. The unsafe conditions left him feeling frustrated and discouraged from returning to the shopping center.

23.1.1.    Mr. Uriel personally identified the deteriorated sidewalks around  Yauco Plaza I Shopping Center. As he attempted to navigate the uneven and cracked pavement with his walker, he experienced significant instability, forcing him to move cautiously and exert extra effort to maintain balance. The irregular surface intensified his back pain and caused discomfort in his joints, making his progress slow and physically straining. Each step required careful maneuvering to avoid potential missteps, further aggravating his lumbar and cervical radiculopathy. The frustration and physical distress he endured due to the poor condition of the sidewalks left him feeling unwelcome and unwilling to return to the shopping center.

23.1.2.    Mr. Uriel encountered deteriorated ramps located around  Yauco Plaza I Shopping Center that made accessing the shopping center extremely difficult. The uneven surface, cracks, and worn-out areas forced him to

adjust his movements repeatedly to prevent his walker from getting stuck and losing stability. The added strain on his back and legs, combined with the lack of a smooth transition, resulted in severe discomfort and increased fatigue. The ramp's poor condition not only slowed his movement but also made him feel unsafe, as he had to focus entirely on each step to avoid a painful misstep. The exhaustion and frustration he experienced while struggling to use the ramp made him feel discouraged from visiting the establishment again.

23.1.3.  In addition, the Municipality of Yauco is responsible for maintaining the sidewalks and ramps around Yauco Plaza I Shopping Center. However, their deteriorated state has made it difficult for Mr. Uriel Sépulveda to move safely through the area. Cracks and uneven surfaces pose a constant risk, making navigation hazardous and uncomfortable. Additionally, the poor condition of the ramps further limits his accessibility, making it difficult for him to navigate the area independently. The municipality's failure to repair these essential infrastructures has not only created physical barriers but has also restricted his ability to access businesses and essential services, reinforcing the daily challenges he faces and subjecting him to an exclusionary and discriminatory situation.

23.2.  The barriers on sidewalks and sidewalk ramps around Yauco Plaza I Shopping Center could be eliminated by repairing and leveling the damaged sidewalks to create a stable and even surface that allows for safe mobility. Cracks and uneven areas should be sealed or repaved to prevent instability and discomfort. The

deteriorated ramp must be reconstructed with a smooth, slip-resistant surface, ensuring a gradual incline without abrupt changes that could cause difficulties when using a walker. Additionally, maintaining these areas through regular inspections and prompt repairs can help prevent future deterioration. Implementing these improvements will significantly enhance accessibility and provide a safer, more comfortable experience for Mr. Uriel.

23.3.    Responsibility of  B.V. Properties Inc. - Yauco Plaza I  Shopping Center: Mr. Uriel Sepúlveda has visited Yauco Plaza I Shopping Center with the intention of accessing its businesses and enjoying the services offered there. However, he has faced multiple difficulties due to the architectural barriers in the parking and access routes present in the shopping center, which limit his mobility and make it difficult for him to access the establishments. Despite B.V. Properties Inc. being responsible for ensuring adequate conditions in the parking and access areas, the lack of measures to improve accessibility has turned these spaces into obstacles for his movement. This situation has not only posed a risk to his safety but has also created a sense of exclusion, as he is unable to navigate the shopping center or access its businesses as easily as other customers. The barriers he knows are the following:

23.3.1.    Deteriorated Access Route from the Parking Lot to the Stores: Mr. Uriel personally identified the poor condition of the access route from the parking lot to the stores, which made his movement extremely difficult. The cracked and uneven pavement forced him to navigate unstable surfaces, causing significant strain on his lower back and joints as he

relied on his walker for support. Each step required excessive effort, increasing his discomfort and fatigue. The instability of the surface also heightened his risk of losing balance, making his passage through this area particularly distressing. Due to this experience, he feels discouraged from returning to the shopping center.

23.3.2.    Damaged Parking Lot Pavement: Upon reaching the parking lot, Mr. Uriel immediately noticed the deteriorated pavement, which created a rough and inconsistent terrain. As he walked with his walker, the uneven surface made it challenging for him to maintain a steady pace, forcing him to adjust his steps continuously to avoid deep cracks and potholes. This aggravated his lumbar pain and caused additional strain on his arms as he struggled to keep his walker stable. The discomfort and difficulty he faced in such a fundamental area of the property left him feeling frustrated and unwelcome, discouraging him from visiting again.

23.3.3.    Worn-Out Ramps: Mr. Uriel encountered worn-out ramps that presented significant obstacles to his movement. The deteriorated surfaces made it difficult for him to use his walker safely. As he attempted to navigate one of the ramps, he felt intense discomfort due to the rough and uneven texture, which put additional stress on his already weakened spine. The poor condition of the ramp forced him to exert more effort, increasing his pain and making him feel unsafe while moving through the area. This distressing experience has left him reluctant to return to the establishment.

23.3.4.   The barriers on Yauco Plaza I Shopping Center could be eliminated by repairing the damaged access route from the parking lot to the stores, ensuring a smooth and stable surface to facilitate safe mobility. The deteriorated pavement in the parking lot should be resurfaced to remove cracks and irregularities that pose risks. Additionally, the worn-out ramps must be restored with durable, non-slip materials to provide a secure transition between different levels. Clear and appropriate signage should be installed to guide movement efficiently. These improvements can significantly enhance the accessibility of the space, ensuring a safer and more comfortable experience.

23.4.   Mr. Uriel, as a customer of Yauco Plaza I Shopping Center, has visited El Meson Sandwiches Yauco Plaza. However, he has encountered difficulties due to architectural barriers in this establishment, which have limited his mobility and access to its facilities. These barriers affect his experience as a customer and restrict his right to fully enjoy the services it offers. Since this business is located within the shopping center, it is also the responsibility of B.V. Properties Inc. to ensure accessibility to it.

23.5.   Responsibility of  B.V. Properties Inc. and Meson De Felipe, Inc.- El Meson Sandwiches Yauco Plaza: Mr. Uriel Sepúlveda appreciates El Meson Sandwiches Yauco Plaza for its fast, friendly, and efficient service. He highlights its family-friendly and peaceful atmosphere, as well as the kindness of its employees and the cleanliness of the place. He knows that the food is delicious, with well-prepared sandwiches, crispy sorullitos, and exceptional quality coffee. He

has visited the restaurant in December of 2024, as well as in January and February of 2025. During these visits, he has encountered architectural barriers that make access difficult. On his last visit on February 28, 2025, he struggled with these barriers once again, that made access difficult, making his experience challenging, and he feels dissuaded from returning.

23.6.   He wants to return to the restaurant within the next two months because he enjoys the consistency of the service, the welcoming environment, and the quality of the food. He values having a place where he can enjoy a good meal in a calm setting. Additionally, he finds the menu options varied and satisfying, making them his preferred spots for breakfast and a quick lunch. However, the architectural barriers make him feel dissuaded from doing so.The barriers he is aware of are the following:

23.6.1.   Cracked and Uneven Access Route: Mr. Uriel personally identified the cracked and uneven access route from the parking lot to the entrance as a significant barrier. As he navigated with his walker, he struggled to maintain stability due to the deep cracks and holes in the pavement, which forced him to proceed with extreme caution. Each step caused him discomfort, aggravating the pain in his lower back and joints. The uneven terrain increased his risk of losing balance, making his movement slow and physically exhausting. This experience made his visit extremely uncomfortable, discouraging him from returning to the establishment.

23.6.2.   Heavy Glass Entrance Door: Mr. Uriel found the main entrance door to be excessively heavy, making it extremely difficult for him to open it while

using his walker. The effort required to pull the door put a significant strain on his arms and shoulders, aggravating his cervical radiculopathy. He had to rely on external assistance to enter, making him feel frustrated and dependent. The difficulty he faced at this initial point of access significantly diminished his experience and discouraged him from returning to the establishment.

23.6.3.    Tables with Lower Support Bars: Once inside, Mr. Uriel identified tables with lower support bars as a significant barrier. These bars obstructed his ability to position himself comfortably, limiting his leg space and preventing him from sitting with ease. He had to make awkward adjustments, which put additional strain on his lower back and hips, exacerbating his osteoarthritis and lumbar pain. The discomfort he experienced while attempting to settle into a seating position made his visit unpleasant and discouraging.

23.6.4.    Narrow Table Distribution: Navigating through the restaurant was another challenge for Mr. Uriel due to the narrow arrangement of the tables. The limited space forced him to carefully maneuver his walker, requiring excessive effort to avoid bumping into furniture. This slow and uncomfortable movement aggravated his lower back pain and made the simple act of reaching a table exhausting. The difficulty in moving freely within the space caused frustration and made his visit an unpleasant experience, discouraging him from returning.

23.6.5.  Small Restroom Space: Mr. Uriel personally faced great difficulty in the restroom due to its extremely reduced space. Once inside, he struggled to maneuver his walker, finding it nearly impossible to turn or position himself comfortably. The lack of adequate room forced him into uncomfortable postures, which intensified his lumbar pain and made his experience distressing. The restricted space not only limited his ability to move but also created a frustrating and exhausting situation that made his visit deeply unpleasant.

23.6.6.  Baby Changing Station Obstruction: Mr. Uriel identified the baby changing station and trash bin inside the restroom as significant obstacles that restricted his ability to position himself properly. The changing station, which is gray, is located on the right side of the bathroom door, further limiting his space and making it difficult for him to maneuver effectively. This element took up crucial space, forcing him into unnatural movements that aggravated his lower back pain. He had to twist his body uncomfortably to navigate the limited area, making his experience both physically painful and frustrating. The difficulty he faced in such an essential space made his visit highly unpleasant and discouraging.

23.6.7.  Inaccessible Support Bar: Another issue Mr. Uriel personally faced was the placement of the lateral support bar, which is gray and located on the left side of the toilet. The bar was positioned too far away and partially obstructed by the black toilet paper dispenser located below it.This made it difficult for him to rely on the bar for balance and support, increasing his

discomfort and making his movements unsteady. The inability to use this essential aid forced him to exert additional effort, further straining his body and worsening his pain. This unnecessary challenge turned a basic necessity into a distressing and exhausting ordeal.

23.6.8.    Lack of Rear Support Bar: Additionally, there was no rear support bar, which further limited Mr. Uriel's ability to maintain balance and stability. The absence of this vital support made it even more difficult for him to use the restroom independently, as it prevented him from having a solid point of contact to steady himself while maneuvering. Without the rear bar, Mr. Uriel was forced to rely on the side bars, which were not positioned to provide adequate support, making simple tasks like shifting his position and standing up a significant struggle. The lack of this essential support forced him to exert more effort, placing increased pressure on his muscles and joints, which worsened his pain and fatigue. This left him vulnerable to losing his balance, increasing the risk of injury and further compromising his independence in the restroom. These difficulties ultimately discouraged Mr. Uriel from visiting the restaurant again

23.6.9.    Obstructed Access to the Toilet: Mr. Uriel encountered great difficulty accessing the toilet due to obstructions caused by the sink and paper dispenser. The black paper dispenser, located on the left side of the toilet, and the white sink, positioned on the right side, further restricted his ability to maneuver properly. These fixtures limited his ability to maneuver into a comfortable position, making his movements restricted

and painful. The lack of adequate space forced him into awkward postures, significantly increasing the strain on his lower back and exacerbating his pain. This frustrating experience made his visit deeply uncomfortable and left him feeling excluded from a space that should have accommodated his needs.

23.6.10.    The barriers at El Meson Sandwiches Yauco Plaza could be eliminated by resurfacing and leveling the access route from the parking lot to remove cracks and holes, ensuring a smooth and stable path. The parking area should have even pavement to prevent difficulties in mobility. The entrance door could be replaced with a lighter, automatic, or push-button-operated door to facilitate easier access. The layout of the tables should be adjusted to create clear pathways that allow unrestricted movement. Tables with lower support bars should be replaced or modified to ensure that they do not obstruct legroom. Inside the restroom, the baby changing station and trash bin should be relocated to prevent obstructions and maximize space. The left support bar must be repositioned at an appropriate distance, ensuring it is fully accessible and unobstructed by other fixtures, and a rear support bar should be installed. Additionally, the sink and paper dispenser should be repositioned to allow adequate clearance for accessing the toilet without unnecessary strain. These adjustments can significantly improve mobility and comfort, ensuring a more inclusive and accommodating environment.

23.6.11.   The Municipality of Yauco has neglected to enforce accessibility regulations and has improperly granted use permits that enable Yauco Plaza I Shopping Center and El Meson Sandwiches Yauco Plaza to operate without adequate accessibility. By allowing a business to function without an accessible entry route and permitting conditions that hinder access, the Municipality has directly contributed to Mr. Uriel Sepúlveda's exclusion. This failure to uphold accessibility standards reinforces his experience of discrimination, as he is systematically denied the opportunity to access and enjoy the establishment under the same conditions as other customers.

***Responsibility of the Municipality of Yauco;  B.V. Properties Inc. - Yauco Plaza II Shopping Center; Supermercado Mr. Special, Inc. - Supermercado Mr. Special Yauco Plaza and Viktor Pollo, LLC - Viktor Pollo Yauco Plaza***

24.   Mr. Uriel chose to visit Yauco Plaza II Shopping Center on March 2, 2025, because it is an incredibly attractive place for those seeking a complete experience of shopping, food, and entertainment. With a variety of high-quality stores, delicious coffee, and excellent restaurants, this mall has earned his preference over others. The prices are truly competitive, which makes it even more appealing. Additionally, the atmosphere is very friendly and safe, allowing visitors to enjoy a worry-free experience. However, after his visit, Mr. Uriel has been discouraged from returning due to the architectural barriers he observed at the location, which made access and mobility difficult—something that cannot be overlooked. Despite this, he plans to return in the near future, possibly in a month, but he remains discouraged by the following barriers that negatively impact his accessibility:

24.1.    Cracks in the Sidewalk: Mr. Uriel personally experienced the difficulties posed by the cracked sidewalk around the Yauco Plaza II Shopping Center. When attempting to access the establishment with his walker, he discovered that the uneven surface made it nearly impossible to move without discomfort. His chronic osteoarthritis and osteoporosis worsened the situation, as every step over the cracks caused sharp pain in his spine, making even short distances difficult to cover. His joints, already weakened by these conditions, suffered unnecessary strain, forcing him to exert extra effort to maintain balance and avoid falling. This physical stress not only caused immediate discomfort but also had a lasting impact on his well-being, as sudden movements worsened his pain and limited his mobility. These conditions significantly hindered his ability to enter the shopping center safely and comfortably, creating an overall negative experience and discouraging him from returning so far.

24.2.    Narrow Sidewalk: In addition to the cracks in the sidewalk, another barrier Mr. Uriel faced was the narrowness of the sidewalk around the Yauco Plaza II shopping center. The sidewalk is so narrow that it makes it difficult for Mr. Uriel to move comfortably with his walker, especially when there are obstacles such as people walking in the same direction. This narrowing significantly limits his space to maneuver with his walker, forcing him to make more complicated and risky movements. Given his health condition, any additional effort to maintain balance increases the risk of falls or injuries. Furthermore, the lack of sufficient circulation space also makes it harder for him to find a safe place to stop or rest if needed. This barrier not only affects his comfort but also puts his safety at risk, as

the lack of adequate space makes it harder for him to move in a safe and comfortable manner, ultimately discouraging him from returning to the shopping center.

24.2.1.    The responsibility of the municipality of Yauco in the continued presence of these architectural barriers is crucial, as local governments must ensure the accessibility and safety of all citizens, especially those with health conditions that require specific attention, such as Mr. Uriel. Both the cracked sidewalk and the narrowness of the sidewalk around the Yauco Plaza II shopping center represent clear barriers to Mr. Uriel's mobility. The narrow sidewalk makes it difficult for him to move comfortably with his walker, especially when there are obstacles like people walking in the same direction, which limits his space to maneuver and increases the risk of falls. The municipality has the obligation to ensure that public infrastructure is in proper condition for the safe use of everyone, and by not addressing these accessibility issues, it is failing in its responsibility, perpetuating a dangerous situation for Mr. Uriel. Immediate solutions must be implemented, such as repairing the sidewalks, widening circulation spaces, installing more stable and level surfaces, as well as adding access ramps and proper signage, to ensure that the environment is safe and accessible for all. If corrective measures are not taken, situations like the one Mr. Uriel experienced will continue to limit access to essential services and negatively affect his quality of life, as well as that of other residents and visitors of Yauco.

24.3.     Responsibility of  B.V. Properties Inc. - Yauco Plaza II  Shopping Center: Mr.
Uriel visited the Yauco Plaza II Shopping Center with the intention of accessing
the various establishments and enjoying the services offered there. However, he
encountered a series of architectural barriers in the parking lot that severely
hindered his access. The parking lot floor, filled with cracks and rocky surfaces,
combined with water leaks, created an extremely dangerous terrain for someone
who uses a walker to move. These conditions made his journey a real challenge.
This situation affected his comfort, creating a clear responsibility for the shopping
center, which has the duty to ensure an accessible and safe environment for all
customers, including Mr. Uriel, who requires an obstacle-free environment to
move safely. The shopping center perpetuates the existence of the following
barriers, which reflects a failure to fulfill its obligation to offer an accessible space
for all, directly harming Mr. Uriel's experience and well-being:

24.3.1.     Uneven Pavement With Cracks, Potholes, And Slopes on Parking Lot: In
addition to the sidewalk issues, Mr. Uriel noticed the rocky and uneven
surface of the parking lot. As he tried to move through this area with his
walker, the vibrations and impacts from the uneven terrain aggravated his
bilateral cervical and lumbar radiculopathy. This condition, which affects
the nerves in his neck and lower back, caused sharp pain radiating down
his legs, making movement difficult without significant pain. The
instability of the surface forced him to move with more caution, but even
then, the risk of falling or losing his balance was ever-present. This not
only affected his comfort but also his safety, as each step on the rocky

ground intensified the pain in his lower back and legs. The combination of physical discomfort and the potential for injury made the parking lot a particularly challenging part of his visit, discouraging him from returning unless these issues are addressed.

24.3.2.    Water Leaks Throughout The Parking Lot: Mr. Uriel personally identified that the entire parking lot had water leaks, creating multiple wet and uneven areas along his path. As he moved with his walker, he encountered several spots where the moisture had made the ground slippery, forcing him to proceed with extreme caution and make slower, more strenuous movements. Due to his lumbar and cervical radiculopathy, any additional tension on his spine significantly increases his pain. In this case, he had to exert constant effort to avoid falls, causing muscle spasms and increasing his fatigue. As a result, he continues to be discouraged from visiting the shopping center due to the challenges these conditions present.

24.3.3.    To address the barriers caused by the uneven pavement with cracks, potholes, slopes, and water leaks in the parking lot, several immediate solutions should be implemented. First, the municipality should prioritize repairing the surface by filling in the cracks, smoothing out the potholes, and leveling the slopes to create a more stable, even terrain. Installing proper drainage systems to prevent water leaks and reduce wet, slippery areas would also greatly improve safety and accessibility. Additionally, the parking lot should be resurfaced with materials that provide a more stable and non-slip surface, particularly in areas with high foot traffic. The

addition of designated accessible paths for individuals with mobility challenges, along with clearly marked, safe zones for resting, would further enhance accessibility. These changes would not only reduce the physical strain on individuals like Mr. Uriel but also make the parking lot safer and more comfortable for all visitors, thus encouraging his return to the shopping center.

24.3.4.    Once these barriers are addressed, Mr. Uriel will be happy to visit the shopping center again. With the improvements made to the parking lot and access areas, he will be able to navigate safely and comfortably using his walker. The smooth and secure pathways will allow him to access the various businesses without the fear of pain, discomfort, or injury. Moreover, knowing that the shopping center is committed to creating an accessible environment will give him peace of mind, enhancing his overall experience. Mr. Uriel looks forward to returning to enjoy the services offered at Yauco Plaza II without the challenges he previously encountered.

25.    As already mentioned, Mr. Uriel experienced the benefits offered by the Yauco Plaza II shopping center, which includes a variety of quality stores and a delicious coffee shop. Additionally, within the plaza are other attractive places such as the Mr. Special supermarket and the Viktor Pollo restaurant, which offer convenient options for his needs. However, despite the positive aspects of these places, Mr. Uriel has been discouraged from visiting them, as he knows they also face architectural barriers that hinder his mobility and access. These barriers continue to be a significant obstacle to his

comfort and safety, leading him to avoid these sites despite the convenience they offer. Specifically, he has observed the following in these establishments:

25.1.    Responsibility of  B.V. Properties Inc. and Supermercado Mr. Special, Inc. - Supermercado Mr. Special Yauco Plaza: On the same day, March 2nd, Mr. Uriel visited Mr. Special supermarket, an establishment located inside Yauco Plaza II Shopping Center, known for its wide variety of high-quality products, especially in its fresh food section, gourmet items, and international products. The store's atmosphere is pleasant, and its customer service is generally well-regarded. However, after his visit, Mr. Uriel has been discouraged from returning due to the multiple architectural barriers he encountered at the location. He knows that the supermarket is a very comprehensive store that offers an excellent shopping experience in many aspects, so he remains interested in returning within the next month, but the presence of these obstacles continues to discourage him from doing so. Specifically, he has observed the following barriers at this establishment:

25.1.1.    Checkout Areas: Mr. Uriel encountered the barrier of insufficient depth and the limited space between the checkout counters. When trying to maneuver with his adapted shopping cart, he realized that the narrow space made it very difficult for him to move around. The lack of depth in the checkout areas prevented him from comfortably approaching the counter to complete his purchase. Additionally, he noticed that there were no preferential checkout lines, which would have helped make his shopping experience easier. The cramped space between the counters

forced him to exert additional physical effort, causing pain in his hips and spine due to the extra pressure he had to apply to move through such a narrow area. These barriers not only affect the comfort of customers but also prevent Mr. Uriel from shopping safely and independently. For him, this situation represents real exclusion, as it hinders him from enjoying a dignified shopping experience, causing him discomfort, pain, and frustration.

25.1.2.    Customer Service Desk: At the customer service area, Mr. Uriel identified the barrier of a counter that lacked sufficient depth. When approaching with his walker, he realized that the counter prevented him from approaching directly and interacting comfortably. The lack of accessibility in this space made him feel frustrated, as he was unable to carry out his tasks efficiently, and the unnecessary effort increased the pain in his spine and joints.

25.1.3.    High Counters in the Fast Food and Dessert Area: Mr. Uriel also found barriers in the fast food and dessert area, where the counters were too high to shop from his adapted shopping cart. This barrier made it difficult for him to access the products, as he could not pay or interact with the staff without excessive effort. His limited mobility, caused by radiculopathy and osteoarthritis, made this challenge especially uncomfortable, causing pain in his back and legs.

25.1.4.    Butcher Counter: The butcher counter was another barrier Mr. Uriel encountered. When trying to access the products from his adapted

shopping cart, he realized that the counter lacked enough depth, preventing him from getting close enough to see, select the products, and pay. This obstacle worsened his shopping experience, as he had to exert additional effort, causing more pain in his joints and lower back.

25.1.5.   Product Arrangement: The inadequate arrangement of products in the supermarket was also a challenge for Mr. Uriel. The placement of the displays made it very difficult for him to reach certain products from his adapted shopping cart. This forced him to make uncomfortable and painful movements in an attempt to grab what he needed, which increased the discomfort in his spine and hips.

25.1.6.   Narrow Aisles That Limit Movement: The limited space in some areas of the supermarket further hindered Mr. Uriel's movement with his adapted shopping cart. In the narrower aisles, he had to maneuver with great care, resulting in additional effort and pain in his joints. The lack of sufficient space made him feel trapped on several occasions, worsening his shopping experience and increasing his physical discomfort.

25.1.7.   Restrooms: In the bathroom, Mr. Uriel encountered several barriers. The entrance door was very narrow and did not open outward, which made it difficult for him to enter with his walker. Inside the disabled stall, there was no free space on either side of the toilet, making the use of the bathroom uncomfortable and restrictive. Additionally, the lack of space between the objects in the stall, such as the trash can, made it impossible for Mr. Uriel to move freely. The sink did not have enough height or depth

to allow full access with his walker, and the exposed plumbing further hindered frontal access.

25.1.8.  To address the barriers that Mr. Uriel faces at Mr. Special supermarket in Yauco, several modifications to the facilities are essential. In the checkout areas, it is necessary to improve the depth of the counters and widen the space between them, as well as install accessible preferential checkout lines for people with disabilities, allowing for more comfortable and independent movement. For the customer service desk, it should be ensured that it has enough depth to allow for direct interaction from a walker, removing physical barriers that hinder communication. In the fast food and dessert areas, counters must be adapted to an appropriate height for those using adapted shopping carts. The same applies to the butcher counter, which should have the necessary depth for customers to approach and select products with ease. Product placement must be reorganized to ensure that all items are accessible without customers having to make uncomfortable or painful movements. Aisles should be widened, eliminating narrow areas that hinder the movement of adapted shopping carts. Finally, the bathrooms need to be remodeled for easier access, with doors opening outward, larger stalls, and sinks at an accessible height. Implementing these solutions would not only improve Mr. Uriel's experience but also ensure that all customers, regardless of their physical condition, can enjoy a dignified and safe shopping experience.

25.1.9.    Once these barriers are addressed, Mr. Uriel will be more likely to return to Mr. Special supermarket. The necessary adjustments will provide him with a safer and more comfortable shopping experience, enabling him to move around freely without the pain and difficulty he faced before. With smoother paths, accessible parking, and better-designed service areas, Mr. Uriel will be able to shop with ease, which will encourage him to choose this supermarket again. The improvements will not only benefit his physical well-being but also enhance his overall experience, allowing him to enjoy a seamless and stress-free visit to a store that he values.

25.2.    Responsibility of B.V. Properties Inc. and Viktor Pollo, LLC - Viktor Pollo Yauco Plaza: Mr. Uriel loves visiting Viktor Pollo at Yauco Plaza II because of its delicious chicken combos served with tostones, which he can get at an affordable price and are quite tasty. He has visited this establishment multiple times, including in January and February 2025, with his last visit being on March 2, 2025. However, due to feeling discriminated against by the architectural barriers that affect his mobility because of his walker and health conditions, he now feels dissuaded from returning.

25.3.    He intends to return in about four months to enjoy his favorite dish, the chicken combo with tostones, which he loves for its taste and excellent value for money. However, the barriers he encounters at the establishment have made him feel excluded and frustrated. The effort he has to make to access the establishment and move around inside negatively impacts his experience and makes him feel uncomfortable, preventing him from fully enjoying his meal. Because of this, he

feels discouraged from returning before, although he still looks forward to coming back to enjoy that delicious combo he loves so much. The barriers that Mr. Uriel personally identified at Viktor Pollo were:

25.3.1.   Large Puddle Of Water In Front Of The Entrance Ramp: Mr. Uriel personally identified that there was a large puddle of water in front of the ramp, which is an essential part of the entrance route, due to a water leak. Because he uses a walker to move around, he was forced to cross this wet surface, causing his walker's wheels to slip slightly, making him feel unstable and fearful of falling. To avoid slipping, he had to apply extra force with his arms and back to maintain control, which worsened his lumbar pain and discomfort in his joints. The additional strain on his spine increased the chronic pain he experiences due to osteoarthritis, leaving him feeling exhausted and frustrated by the unsafe entrance conditions.

25.3.2.   Service Counter Too High: Mr. Uriel personally identified that the service and transaction counter, which was red and had a square silver metal bar in front of it, was too high, making it impossible for him to use it comfortably and accessibly. When he attempted to support himself to complete his transaction, he had to extend his arms and lift them above his comfort level, putting significant strain on his spine and shoulders. This effort worsened his cervical radiculopathy, causing radiating pain down his arms and limiting his ability to stabilize himself with his walker. The lack of an accessible surface forced him into an awkward and unsafe position, increasing his physical exhaustion and discomfort.

25.3.3.    Interior Ramp With Uneven Floor And Slopes: Mr. Uriel personally identified that the interior ramp leading to the restroom had an uneven surface and slopes that made access difficult. When attempting to use the ramp with his walker, he stumbled several times due to the instability of the floor. The lack of a level surface caused his walker to tilt slightly at certain points, creating a strong impact on his lower back as he struggled to correct his posture and avoid falling. Due to his chronic osteoarthritis, these sudden movements caused sharp pain that radiated down to his knees, making the simple act of reaching the restroom a painful and exhausting process.

25.3.4.    Restroom Too Narrow: Mr. Uriel personally identified that the restroom was too narrow, making it difficult for him to move around with his walker. When he entered, he had to twist and maneuver with great effort due to the lack of space, which increased pressure on his sacroiliac joints and spine. Because of the cramped space, every attempt to move forced him into uncomfortable positions, intensifying his pain and discomfort. The inability to move normally within the restroom caused significant physical stress and prevented him from completing his hygiene needs properly.

25.3.5.    Soap Dispenser Too High: Mr. Uriel personally identified that the soap dispenser was placed at an excessive height, preventing him from reaching it without extra effort. When he attempted to use it, he had to stretch forcefully, which increased his lumbar and arm pain. The repeated need to

raise his arms to reach the dispenser triggered muscle spasms in his back, worsening his overall discomfort.

25.3.6.    Paper Towel Dispenser Too High: Mr. Uriel personally identified that the paper towel dispenser was installed too high, making it difficult for him to use. To reach it, he had to lean awkwardly and apply force with his arms, which caused increased cervical and lumbar pain. This barrier frustrated him and made it difficult to complete his hygiene routine properly.

25.3.7.    Hand Dryer Too High: Mr. Uriel personally identified that the hand dryer was placed at an excessive height, preventing him from using it easily. When he attempted to approach it to dry his hands, he had to repeatedly lift his arms, which increased pressure on his spine and caused sharp pain in his lower back. Due to his condition, this simple task became physically exhausting.

25.3.8.    Sink With Exposed Pipes: Mr. Uriel personally identified that the sink had exposed pipes underneath, which posed a risk of accidental contact while he tried to use it. Due to the restroom's narrowness, he could not position himself comfortably without his legs touching the pipes, which made him feel unsafe and caused discomfort in his knees and hips as he struggled to adjust without proper support.

25.3.9.    Urinal Too High: Mr. Uriel personally identified that the urinal was placed at an excessive height, making it impossible for him to use. As he approached, he realized he could not use it without straining his posture, which caused him sharp lumbar pain. Because he was unable to position

himself comfortably, he had to remain standing longer than his condition allows, increasing the inflammation in his joints and worsening his overall discomfort.

25.3.10.  Urinal Blocked By Objects: Mr. Uriel personally identified that the urinal was obstructed by several objects, including a blue toilet brush and a blue plunger to the left, as well as a white trash bin to the right. This obstruction severely reduced the available space for him to maneuver with his walker. When he attempted to position himself, he was unable to move his walker close enough, forcing him into an unnatural stance that put excessive pressure on his lower back and legs. This unnecessary strain significantly increased his pain and made using the urinal an exhausting and distressing experience.

25.3.11.  Toilet Blocked By Objects: Mr. Uriel personally identified that the toilet was blocked on the right side by a blue toilet brush and a blue plunger, preventing him from safely approaching it. When he attempted to position himself, he found that the objects restricted his movement, forcing him to twist his body and put extra pressure on his joints to try to fit into the space. This caused significant discomfort in his sacroiliac joints and worsened his chronic pain. The lack of space forced him to struggle in an already painful situation, making his experience even more physically taxing.

25.3.12.  Toilet Without Grab Bars: Mr. Uriel personally identified that the toilet did not have rear or side grab bars, making it extremely difficult for him to sit

down and stand up. When he attempted to use it, he found himself without any support, forcing him to rely entirely on his walker for stability. This caused immense strain on his arms and shoulders, exacerbating his radiculopathy and making each movement painful. Without proper grab bars, he had to exert excessive force to lift himself, intensifying his back pain and leaving him feeling physically drained and vulnerable.

25.3.13.   To ensure accessibility and compliance with the ADA, several modifications must be made throughout the property. The excessively high service counter should be lowered or supplemented with an accessible counter at a compliant height. The interior ramp leading to the restroom must be resurfaced to eliminate slopes and ensure a stable and even surface. The restroom's narrow space should be expanded, or at a minimum, layout adjustments should be made to provide enough maneuvering clearance for individuals using mobility aids. The soap dispenser, paper towel dispenser, and hand dryer should be lowered to an accessible height so they can be reached without excessive stretching. The sink's exposed pipes must be insulated or modified to prevent accidental contact. The urinal should be lowered to a compliant height, and all obstructions, including the blue toilet brush, blue plunger, and white trash bin, must be permanently removed to allow proper approach and use. The toilet must be repositioned to ensure adequate clearance, all obstructions must be removed, and compliant rear and side grab bars should be installed to provide the necessary support for safe transfers. Implementing

these solutions will create an environment where individuals with disabilities, including Mr. Uriel, can navigate and use the facilities safely and with dignity.

### ***Responsibility of the Municipality of Supermercado Napo Velez Cash & Carry Inc. Supermercado Napo Velez Yauco***

26. Mr. Uriel is a frequent customer of Supermercado Napo Vélez Yauco, as it offers a wide variety of products, including vegetables, meats, and other high-quality fresh items. He enjoys purchasing items such as bottled water, Hershey's Milk Chocolate, and other consumables. He has visited the supermarket several times, including in January and February 2025, with his most recent visit being on March 2, 2025. However, since that last visit, Mr. Uriel has not wanted to return because he feels discouraged by the architectural barriers that affect his mobility and his ability to navigate the store safely with his walker.

27. Despite his interest in continuing to shop at the supermarket due to the variety and quality of the products it offers, the existence of these barriers and the discrimination he experienced during his visit have made him feel excluded and unable to enjoy his shopping experience with dignity. This situation has discouraged him, as he believes that if he returns in his current state, he would once again face obstacles that would limit his ability to access the supermarket without encountering unnecessary difficulties. Nonetheless, he intends to return in three months, hoping that these barriers will have been resolved, allowing him to shop in a comfortable and accessible manner. The barriers that Mr. Uriel personally identified at Supermercado Napo Vélez Yauco were:  :

27.1.    Parking Signage Too Low: Mr. Uriel personally identified that the designated parking space for individuals with disabilities lacked proper signage at the required height, as the sign was placed too low, making it difficult to identify the space from a distance. When he arrived at the parking lot, he struggled to locate the accessible space, forcing him to circle around unnecessarily in search of a suitable place to park and safely exit his vehicle. This situation left him standing for longer than his body could tolerate without support, increasing the pressure on his spine and sacroiliac joints. As a result, he experienced intense pain in his lumbar region, accompanied by stiffness in his back and muscle spasms in his legs due to the extra effort required to remain stable with his walker.

27.2.    Worn-Out Parking Paint: Mr. Uriel personally identified that the paint marking the accessible parking spaces was worn out, making it difficult to distinguish the designated area. When attempting to park, he found it confusing to determine the boundaries of the accessible space, forcing him to make additional adjustments with his vehicle and walker. This prolonged the time he spent standing, increasing the pressure on his joints and lumbar spine. The mechanical stress on his body caused severe pain in his lower back, making every step with his walker more uncomfortable and exhausting. The lack of clear signage turned a simple task into a painful and physically demanding experience.

27.3.    Improperly Located Access Aisle: Mr. Uriel personally identified that the access aisle in the parking lot was improperly located, far from the access route to the main entrance. Because of this poor placement, he was forced to walk a greater distance with his walker, increasing his fatigue and joint pain. As he attempted to

move forward, he felt the prolonged effort increasing inflammation in his knees and lumbar area, causing stiffness and greater difficulty in maintaining balance. This barrier made him experience premature exhaustion and intense pain in his lower back, affecting his stability and making him hesitate with every step he took.

27.4. Uneven Surface On The Ramp And Access Route: Mr. Uriel personally identified that the ramp and the access path leading to the entrance had an uneven surface, making it difficult for him to walk safely with his walker. As he advanced, he felt his walker's wheels getting stuck in the uneven surfaces, forcing him to exert additional effort to maintain balance. This additional strain caused severe tension in his spine and sacroiliac joints, increasing his pain and physical discomfort. Several times, the instability of the surface caused him to lose his balance, which made him feel panicked and heightened his muscle tension. The constant struggle to remain upright left him exhausted and with an extreme sense of weakness in his legs, increasing his frustration over the lack of accessibility in the location.

27.5. Service Counters Too High: Mr. Uriel personally identified that the service counters inside the establishment were too high, making it impossible for him to use them comfortably and accessibly. When attempting to complete a transaction, he had to lift his arms higher than his mobility allowed without pain, increasing tension in his shoulders and cervical spine. This action worsened his cervical radiculopathy, causing sharp pain radiating from his neck down to his arms. Additionally, the lack of an accessible counter forced him into a strained and

unbalanced position, which increased his muscle fatigue and left him feeling unstable and physically drained.

27.6.    Service Counters Without Depth: Mr. Uriel personally identified that the service counters lacked sufficient depth to allow him to approach comfortably with his walker. When he tried to get closer to make a purchase, he found that his walker hit the structure, preventing him from reaching the counter adequately. This forced him to lean forward uncomfortably, putting intense pressure on his lower back and sacroiliac joints. This additional effort caused a sharp pain in his lower back, making him feel dizzy and requiring him to stop to relieve the discomfort before continuing.

27.7.    Products Placed Too High: Mr. Uriel personally identified that many of the products inside the establishment were placed on shelves that were too high, out of his reach. When he attempted to grab a product, he had to stretch beyond his physical comfort range, causing immediate pain in his shoulders and increasing his cervical radiculopathy. This forced movement triggered a sensation of tingling and weakness in his arms, preventing him from securely grasping the products without experiencing pain. Frustrated and physically strained, he was unable to access the items he needed, making his shopping experience unnecessarily difficult and painful.

27.8.    Aisles Blocked By Stacked Merchandise: Mr. Uriel personally identified that the circulation between the store shelves was obstructed by stacked merchandise, preventing him from moving freely with his walker. As he attempted to move through the aisles, he encountered tight spaces where he had to make

uncomfortable maneuvers to avoid bumping into boxes and products placed in his path. These movements forced him to twist his body abruptly, causing sharp pain in his lower back and sacroiliac joints. Every additional effort increased his fatigue, leaving him feeling extremely exhausted and weaker in his legs.

27.9.    Toilet Blocked By A White Trash Bin And A Red Plunger: Mr. Uriel personally identified that the toilet was obstructed by a white trash bin and a red plunger, which severely restricted his ability to position himself properly. When he attempted to approach the toilet with his walker, he found that the objects blocked his movement, forcing him to make repeated attempts to adjust himself. Each attempt placed excessive stress on his lower back and sacroiliac joints, significantly increasing his pain. The lack of clear space turned what should have been a simple task into a distressing and physically painful struggle.

27.10.    No Rear Grab Bar For Toilet: Mr. Uriel personally identified that the toilet did not have a rear grab bar, making it extremely difficult for him to sit down and stand up. Without a proper support structure, he was forced to rely entirely on his arms and back for stability. This lack of support put immense strain on his shoulders and lumbar spine, causing significant pain as he attempted to lower himself and stand back up. The absence of a rear grab bar made using the toilet an unsafe and exhausting process, increasing his risk of falling and making him feel vulnerable in an environment that should have provided security.

27.11.    Side Grab Bar Incorrectly Positioned: Mr. Uriel personally identified that, although the restroom had a side grab bar, it was incorrectly positioned—placed too far from the toilet and at an excessive height. When he attempted to use it for

support, he found that he could not grasp it securely without overextending his arms and shoulders. Because of its improper placement, he had to twist his body uncomfortably to reach it, causing sharp pain in his lower back and exacerbating his radiculopathy symptoms. The inadequate positioning of the grab bar significantly compromised his ability to use the restroom safely and independently.

27.12.  The Municipality Of Yauco is responsible for the discrimination suffered by Mr. Uriel by granting a use permit to an establishment that lacks accessible parking in compliance with the ADA. By authorizing the operation of a business without ensuring that its facilities are accessible to individuals with disabilities, the municipality not only fails in its duty to guarantee that public and commercial spaces meet accessibility regulations but also perpetuates the barriers that restrict Mr. Uriel's mobility and safety. The presence of a parking lot with inadequate signage, worn-out paint, and a poorly located access aisle not only made it difficult for Mr. Uriel to access the establishment but also caused him unnecessary physical suffering, worsening his health condition. By allowing a business to operate under these conditions, the Municipality Of Yauco validates a discriminatory situation that prevents individuals with disabilities from accessing and moving through the space on equal terms, reinforcing exclusion and violating their rights.

27.13.  To ensure full accessibility and compliance with the ADA, the property must undergo several modifications to eliminate all barriers identified by Mr. Uriel. The parking signage must be repositioned at the correct height to allow easy visibility

from a distance, and the worn-out parking paint must be reapplied to clearly mark the designated accessible spaces. The access aisle must be relocated to align with the main entrance route, providing a direct and convenient path. The uneven surface on the ramp and access route must be repaired by resurfacing and leveling the ground to create a smooth and stable surface. The service counters must be lowered to a compliant height, and an accessible counter with adequate depth should be installed to allow proper approach with a walker. All products must be repositioned at reachable heights, and aisles must be kept clear of stacked merchandise to ensure unobstructed circulation. In the restroom, the toilet's obstructions, including the white trash bin and red plunger, must be removed to provide sufficient clearance for safe use. A properly positioned rear grab bar must be installed, and the existing side grab bar must be relocated to an appropriate distance and height to provide effective support. The soap dispenser, paper towel dispenser, hand dryer, and light switch must all be lowered to an accessible height. Implementing these changes will ensure that individuals with mobility impairments, including Mr. Uriel, can navigate and use the facilities safely, comfortably, and independently.

### ***Responsibility of the Municipality of Yauco and Supermercado Agueybana, Inc. Supermercado Econo Yauco***

28.    The Econo Supermarket in Yauco is an excellent option for those looking for quality products at affordable prices. This supermarket has gained the preference of both residents and visitors in the area due to its wide variety of products, including fresh food, cleaning supplies, personal care items, and more. Its focus on offering competitive prices makes it an ideal place to purchase everyday essentials. Because of these advantages, on

March 3, 2025, Mr. Uriel decided to visit the Econo Supermarket in Yauco. However, his experience was not as positive as he had expected. While walking through the store, he noticed several architectural barriers that made his visit much more difficult. Despite these challenges, Mr. Uriel remains interested in returning to the supermarket in the near future, possibly within three months. However, the presence of the following barriers continues to discourage him from doing so unless improvements are made to address them:

28.1.    Cracked and Pothole-Ridden Sidewalk: Mr. Uriel personally identified the barrier of the sidewalk around the Econo Supermarket, which was cracked and full of potholes. When attempting to enter the supermarket with his walker, he found that the uneven terrain made it extremely difficult for him to move. Due to his osteoporosis and chronic osteoarthritis, each step over the cracks and potholes caused pain in his joints, especially in his spine. Despite his efforts, the walker did not provide enough stability, making the journey uncomfortable and affecting his mobility, preventing him from entering the store quickly and without difficulty.

28.1.1.    The municipality of Yauco has a direct responsibility in improving the sidewalk around the Econo Supermarket, as the current conditions of the path represent a significant barrier to Mr. Uriel's mobility. The sidewalk is full of cracks and potholes, which makes it extremely difficult for individuals like him, who require a walker to move, to navigate. Mr. Uriel, who suffers from osteoporosis and chronic osteoarthritis, experienced pain in his joints, especially his spine, when attempting to navigate these obstacles. This situation not only affects his comfort but also puts his

safety at risk. The municipality, as the entity responsible for ensuring the accessibility and well-being of its citizens, must ensure that public infrastructure is in proper condition. By not addressing this issue, the municipality is allowing a condition to persist that prevents Mr. Uriel from easily accessing the supermarket, negatively affecting his quality of life and discouraging him from returning. It is essential that measures be taken to repair the sidewalk, eliminating the potholes and cracks, so Mr. Uriel can move safely and without pain.

28.2. Rocky Parking Lot Floor: Mr. Uriel also noticed the rocky floor in the parking lot, which presented an additional challenge when trying to park near the entrance. The uneven stones made it difficult for him to maneuver with his walker. As he tried to move through the parking area, his bilateral cervical and lumbar radiculopathy were aggravated by the vibrations and impacts from the rough terrain, causing an increase in pain in his lower back and legs. This irregular surface prevented him from moving with the safety and ease he needed to reach the entrance of the supermarket.

28.3. Narrow Space Between Checkout Counters: Upon reaching the checkout counters, Mr. Uriel encountered the barrier of a narrow space between the counters. The lack of depth in the checkout areas and the limited space to maneuver made it difficult for him to move with his adapted shopping cart. Even though the preferential checkout lines should have been clear of displays, they were blocked, forcing Mr. Uriel to make extra effort to move through the cramped

space, which caused pain and discomfort in his hip and spine joints due to the added pressure on his body.

28.4.    Shallow Customer Service Desk: At the customer service area, Mr. Uriel identified the barrier of a counter that lacked sufficient depth for comfortable interaction. When approaching with his walker, he had difficulty reaching the products or completing any transactions, as the counter was too high and did not allow for direct access. This aggravated his mobility issues, as he was unable to complete tasks efficiently, and the pain in his spine increased due to the unnecessary effort required to get closer to the counter.

28.5.    Too High Butcher Counter: The butcher counter presented another significant barrier for Mr. Uriel. When trying to purchase products in the area, he realized that the counter was too high, and he could not reach the display area with his adapted shopping cart. This barrier was intensified by his condition of bilateral radiculopathy and osteoarthritis, which limit his range of motion and made it difficult for him to get close enough without exerting excessive effort. This situation caused discomfort and increased pain in his legs and lower back.

28.6.    Limited Space Between Aisles: In the product aisles, Mr. Uriel observed that the space between them was limited, making it difficult for him to move with his adapted shopping cart. His health conditions, particularly radiculopathy and osteoarthritis, made each maneuver through the aisles painful and exhausting. The limited space forced Mr. Uriel to maneuver carefully, but even so, his adapted shopping cart often got stuck between shelves, making it even harder for him to move and putting him in an uncomfortable and painful situation.

28.7.    Inadequate Product Arrangement: The inadequate arrangement of products was also a barrier that Mr. Uriel experienced when attempting to access certain items. The displays and product placement prevented him from reaching them from his adapted shopping cart, which caused frustration. His condition of osteoarthritis and radiculopathy made it difficult for him to bend or stretch to reach items on high shelves, increasing the pain in his back and joints. This made his shopping experience even more uncomfortable, as he had to rely on help from other customers to get what he needed.

28.8.    Beyond the physical barriers, on March 3, 2025, Mr. Uriel experienced an attitude barrier when he approached the supermarket manager to express his difficulties due to the architectural barriers he had encountered. Both the manager and another member of the management team made him understand that, to them, people with disabilities were not a priority. Instead of offering solutions or showing empathy, they dismissed his concerns, minimizing his experience and needs. This attitude deeply affected him, as, living with pain and mobility issues, he expected respectful and accessible treatment. Instead of finding understanding and support, Mr. Uriel felt dismissed, which increased his frustration and made it clear to him that, for this management, people with conditions like his had no value in their service and accessibility policies.

28.9.    To address the barriers Mr. Uriel faced at the Econo Supermarket, several improvements should be made. First, the sidewalk and parking lot should be repaired to eliminate cracks, potholes, and rocky surfaces, ensuring a smooth and accessible path for Mr. Uriel when using his walker. The municipality must ensure

compliance with accessibility regulations, making sure that both the urban environment and public spaces are suitable for Mr. Uriel. This includes repairing cracked sidewalks and improving access to public places, such as supermarkets. Additionally, the supermarket must guarantee that the aisles and checkout areas should be expanded to allow him to move easily with his adapted shopping cart. The customer service desk and butcher counter should be adjusted in height and depth so that Mr. Uriel can access them without difficulty. Products should be placed at accessible heights from his shopping cart, avoiding unnecessary effort on his part. Finally, the attitude of the supermarket manager and staff should be more understanding and empathetic, listening to Mr. Uriel's difficulties and taking steps to improve accessibility, demonstrating that his well-being and comfort are a priority for the store.

28.10.    Once these barriers are addressed, Mr. Uriel will return to the Econo Supermarket. Despite the inconveniences he experienced, he values the variety of quality products and the affordable prices the supermarket offers. As a place that meets his basic needs in an economical way, Mr. Uriel recognizes the benefits of shopping there. If the architectural barriers are corrected and accessibility improves, he will be able to return without difficulties, enjoying a comfortable shopping experience without pain, which will make him feel respected and valued as a customer.

### *Responsibility of the Municipality of Yauco and Supermercado Mr. Special, Inc. Supermercado Mr. Special Yauco (Barbosa)*

29.    Mr. Uriel visited the Mr. Special Yauco (Barbosa) supermarket on March 2nd, attracted by its proximity and the convenience of offering fresh, high-quality products that are hard

to find elsewhere. This supermarket is known for its excellent organization, a clean and orderly environment, and the ease of finding specific products he needs. Despite all these advantages, after his last visit, Mr. Uriel has been reluctant to return due to the difficulties he faced while trying to move with his walker. The conditions of the place made his mobility quite complicated, causing him pain, discomfort, frustration, and even making him feel discriminated against. However, Mr. Uriel is still interested in returning to the supermarket within the next month, as he recognizes the value of the store's offerings. Nonetheless, he remains discouraged from doing so unless the following architectural barriers that hinder his mobility are addressed, as he knows that without these improvements, his experience will continue to be painful and difficult:

29.1.    Sidewalk Full of Cracks and Narrow: Mr. Uriel personally identified the barrier created by the cracked and narrow sidewalk around the Mr. Special Yauco (Barbosa) supermarket. When trying to access the store with his walker, he realized that the cracks seriously hindered his movement, and the narrow space made it necessary for him to exert unnecessary effort to move forward. The cracks in the pavement aggravated the pain in his spine due to his chronic osteoarthritis and osteoporosis, increasing the discomfort in his joints, especially in his lower back, making the entry into the supermarket an uncomfortable and painful experience.

29.1.1.    Sidewalk Full of Cracks and Narrow: Mr. Uriel personally identified the barrier created by the cracked and narrow sidewalk around the Mr. Special Yauco (Barbosa) supermarket. When trying to access the store with his walker, he realized that the cracks seriously hindered his movement, and

the narrow space made it necessary for him to exert unnecessary effort to move forward. The cracks in the pavement aggravated the pain in his spine due to his chronic osteoarthritis and osteoporosis, increasing the discomfort in his joints, especially in his lower back, making the entry into the supermarket an uncomfortable and painful experience.

29.2.   Parking Lot Floor: Mr. Uriel also identified the barrier caused by the uneven surface in the parking lot. When attempting to move with his walker, the irregularities in the floor caused vibrations and jolts that worsened his bilateral cervical and lumbar radiculopathy. This resulted in increased pain in his lower back and legs. The lack of a stable and level surface made it extremely difficult and painful for him to move towards the supermarket entrance, increasing his frustration and limiting his ability to move safely.

29.3.   Entrance Door: Mr. Uriel faced difficulties with the supermarket's entrance door, which was very narrow and had a ledge. When trying to pass through with his walker, he noticed that the limited space made it hard for him to enter comfortably. His osteoarthritis and lumbar radiculopathy made any effort to maneuver the walker in such a confined space painful and uncomfortable. The door's ledge also forced him to make strained movements, worsening the discomfort and pain in his joints.

29.4.   Checkout Barrier: Mr. Uriel also encountered a barrier at the checkout due to insufficient depth and the absence of priority lanes. When trying to approach with his walker, he found that the lack of space prevented him from getting close enough to the counter to pay comfortably. Furthermore, the absence of priority

lanes forced him to use regular checkouts, where the lack of accessible design made his mobility even more difficult. This physical obstacle aggravated the pain in his spine and hips due to the extra effort required to maneuver the walker.

29.5.    Narrow Aisles: Mr. Uriel identified the narrow aisles as a significant barrier affecting his ability to move with his walker. The reduced aisle space made it difficult to maneuver efficiently, almost making it impossible to move without encountering obstacles or difficulties. This limitation not only caused discomfort but also increased the likelihood of him feeling trapped or disoriented, which heightened his frustration. The reduced space in the aisles not only affected his movement but also increased the risk of accidents or falls, especially when trying to avoid other customers or shelves.

29.6.    Lack of Adapted Carts:The absence of shopping carts adapted for his use was another barrier that further complicated Mr. Uriel's experience. Without carts tailored to his needs, it was nearly impossible for him to shop efficiently and independently. This not only made it difficult for him to access products but also increased his dependence on others to complete his shopping. The inability to use an adapted cart caused discomfort and limited his freedom of movement, which worsened his overall experience at the supermarket, adding an extra level of frustration and exhaustion.

29.7.    To improve accessibility and Mr. Uriel's experience, several effective solutions could be implemented. First, the sidewalk and parking lot floor could be repaired and leveled to eliminate cracks and potholes, creating a smooth and safe surface for people with limited mobility. The supermarket entrance should have wider

doors without ledges or slopes, allowing for easier access with a walker or wheelchair. Additionally, it would be essential to offer checkout counters with greater depth and provide priority lanes for people with disabilities, ensuring they can shop independently and comfortably. The aisles could be widened to facilitate unobstructed movement, and the inclusion of adapted shopping carts for people with limited mobility would allow for a more autonomous experience. Implementing these measures would not only improve accessibility but also increase Mr. Uriel's satisfaction and well-being. The municipality of Yauco should play a key role in implementing these solutions by working together with local authorities and businesses to ensure that infrastructures are accessible to everyone. This includes coordinating the repair and leveling of sidewalks and parking lots to eliminate any obstructions, which would facilitate safe passage for people with reduced mobility.

29.8.    When these barriers are solved, Mr. Uriel will be able to return because he will be able to access the supermarket safely and comfortably, without the obstacles that currently limit his mobility. With infrastructure adapted to his needs, such as wider entrances, unobstructed aisles, and accessible shopping carts, he will be able to shop more independently and with greater confidence. Additionally, the improved accessibility and priority service at checkout counters will provide him with a more satisfying and dignified experience. With these changes, Mr. Uriel will feel more included and welcomed, which will motivate him to return and enjoy a much more positive shopping experience.

### ***Responsibility of the Municipality of Yauco and Willies Bar And Restaurant LLC - Willie's Bar & Restaurant***

30.  Mr. Uriel Sepúlveda is a regular customer of Willie's Bar & Restaurant, which he visited between January and February 2025, with his last visit on March 3, 2025. He was drawn to the place due to the intense and well-balanced flavors of its dishes, such as the golden quesadillas filled with melted cheese or the crispy nachos topped with generous portions of guacamole and seasoned meat. However, during his visit, he personally identified severe architectural barriers that significantly affected his experience, generating a sense of discomfort and frustration, which dissuaded him from returning.

31.  Mr. Sepúlveda intends to return to Willie's Bar & Restaurant within the next two months to enjoy its dishes, specifically to try the golden quesadillas filled with melted cheese, but he is currently dissuaded from doing so by the ongoing presence of accessibility barriers that affect his experience and comfort at the establishment. The obstacles listed below, which Mr. Sepúlveda personally faced and engaged with, not only led to considerable discomfort during his visit but also strengthened his decision to refrain from returning until these issues are addressed:

31.1.  Deteriorated Sidewalk: Mr. Uriel Sepúlveda identified that the sidewalk in front of Willie's Bar & Restaurant was in a significant state of disrepair, lacking clear boundaries, with visible cracks, and interruptions along its path due to its poor condition. In certain areas, the sidewalk was practically nonexistent, making it difficult to continue moving forward and forcing him to seek unsafe alternative routes. To be considered accessible, a sidewalk must have a continuous, even surface without abrupt interruptions that compromise the mobility of individuals who require assistance for walking. Due to his need for mobility support and the

challenges he faces on uneven surfaces, these interruptions posed a major obstacle.

31.1.1.    The lack of a continuous and stable path made it difficult for him to maintain balance, increasing physical strain and the risk of falls. As a result, his journey to the restaurant became an unsafe and exhausting experience, affecting his comfort and overall well-being. As the entity responsible for maintaining and improving public infrastructure, the municipality has the duty to ensure that sidewalks are safe and accessible for everyone. However, its lack of action has allowed these deficiencies to persist, affecting Mr. Uriel's right to navigate without obstacles and access this establishment.

31.2.    Narrow and Obstructed Sidewalk: Mr. Uriel Sepúlveda also identified that the sidewalk near Willie's Bar & Restaurant was excessively narrow and further obstructed by the illegal occupation of vehicles. For a sidewalk to be considered accessible, it must have sufficient width to allow safe and unobstructed passage, ensuring comfortable transit for all individuals, especially those who require mobility assistance. The limited space and the presence of illegally parked vehicles made his movement extremely difficult. The restricted area reduced his ability to maneuver, often forcing him dangerously close to the edge of the sidewalk or to seek unsafe alternatives to continue his route. This situation caused him great discomfort and concern, as well as additional physical effort that affected his stability and safety, making his access to the restaurant unnecessarily difficult and discouraging.

31.2.1.    The municipality is responsible for ensuring the proper use of public roads and ensuring that sidewalks are wide enough to allow safe passage for all citizens, especially those with mobility challenges. However, the municipality's inaction has allowed this obstruction to persist, putting pedestrians' safety at risk and limiting access to the establishment

31.3.    Irregular Surface on the Access Ramp: Mr. Uriel Sepúlveda noticed that the ramp connecting the public sidewalk to the first level of Willie's Bar & Restaurant had a deteriorated surface with irregularities caused by small stones and visible wear. To ensure accessibility, a ramp must have a smooth, obstacle-free surface that allows for safe movement. However, in this case, the condition of the surface posed a significant risk of tripping or slipping, making the ramp difficult to use properly. While attempting to navigate this ramp, he experienced discomfort due to the lack of stability on the surface. The uneven terrain and loose fragments made his movement unsafe and physically demanding, increasing the likelihood of losing balance and turning access to the establishment into a challenging and hazardous experience.

31.4.    Inadequate Slope on the Access Ramp: Mr. Uriel Sepúlveda also noticed that the slope of the ramp connecting the public sidewalk to the first level of Willie's Bar & Restaurant did not meet accessibility standards. To be safe and functional, a ramp's incline must be gradual, allowing movement without requiring excessive effort. In this case, the steep slope of the ramp made it difficult to use, making both ascent and descent particularly demanding and dangerous. During his attempt to use this ramp, the improper incline increased the difficulty of

maintaining control and stability, causing discomfort and a constant sense of insecurity. This physical barrier presented an additional challenge to his mobility and significantly hindered his access to the establishment, negatively impacting his experience and making entry unsafe and non-inclusive.

31.5. Irregular Surface on the Access Ramp to the Interior: Mr. Uriel Sepúlveda identified that the ramp connecting the exterior zone to the interior zone of Willie's Bar & Restaurant had an irregular surface due to the presence of synthetic or artificial grass. To ensure safe access, a ramp's surface must be firm, stable, and non-slip, allowing for obstacle-free movement without the risk of slipping. However, the material placed on this ramp created an unstable texture that made it difficult to use. When attempting to move along this ramp, he experienced discomfort and difficulty maintaining stability, as the uneven surface affected his ability to navigate safely. This physical barrier not only increased the effort required to move forward but also heightened the risk of losing balance, making access to the establishment an unsafe and challenging experience.

31.6. Inadequate Slope on the Access Ramp to the Interior: Mr. Uriel Sepúlveda also identified that the ramp connecting the exterior zone to the interior zone of Willie's Bar & Restaurant had an inadequate slope. To be safe and functional, a ramp's incline must be gradual, preventing excessive physical effort or compromising stability. However, in this case, the ramp's steep slope made it difficult to use, increasing the risk of slipping or losing control. While attempting to use this ramp, he struggled to move forward with stability, as the improper incline required significant physical effort and created a constant sense of

insecurity. This barrier directly affected his ability to access the establishment, making entry physically demanding and unsafe, as well as compromising his comfort during the visit.

31.7.   Establishment Entrance Obstructed by Rugs: Mr. Uriel Sepúlveda also found that the entrance to Willie's Bar & Restaurant was obstructed by a rug that created a barrier to his mobility. To ensure safe access, entrances need to remain free of obstacles and have stable surfaces that allow for smooth movement without hazards. However, the presence of these rugs made entering the establishment more difficult by creating uneven surfaces and potential tripping points. When attempting to enter, he encountered difficulties due to the instability these rugs added to the surface. The material and placement of the rugs created resistance to movement, affecting his stability and increasing the effort required to cross the entrance. This physical barrier compromised his ability to access the restaurant, turning a simple action like entering into a complicated and unsafe experience.

31.8.   Chairs Inaccessible Due to Height: Mr. Uriel Sepúlveda identified that the chairs available at Willie's Bar & Restaurant were excessively high, making them difficult for him to use and preventing him from sitting safely. To ensure his comfort and stability, the furniture needs to allow for a smooth transition without requiring excessive physical effort. However, the height of these chairs created a significant barrier, making it nearly impossible for him to use them without difficulty. When attempting to sit, he struggled to do so securely, as the excessive height required considerable effort and increased the risk of losing balance. This situation limited his comfort and restricted his seating options within the

establishment, negatively affecting his experience by preventing him from accessing a suitable seating area.

31.9.    Tables Inaccessible Due to Lower Support Bar: Mr. Uriel Sepúlveda also identified that the tables at Willie's Bar & Restaurant had a structural barrier in their design: a lower support bar that prevented him from properly positioning himself. For a table to be accessible to him, it must provide sufficient clearance underneath, allowing him to position himself comfortably without restrictions. Due to the presence of this support bar, he faced serious difficulties in approaching the table and positioning himself correctly. The obstruction limited his ability to sit securely, making it impossible for him to enjoy his experience on equal terms. This lack of accessibility in the furniture not only caused discomfort but also restricted his ability to remain in the establishment with autonomy and comfort.

31.10.   Narrow Circulation Space Due to Establishment Layout: Mr. Uriel Sepúlveda identified that the circulation space inside Willie's Bar & Restaurant was too narrow due to the arrangement of the furniture and overall interior organization. To ensure accessibility, passageways must be wide enough to allow smooth movement without restrictions or forced maneuvers. However, in this case, the limited space significantly hindered his mobility, forcing him to make uncomfortable movements and increasing the risk of bumping into obstacles or being blocked along his path. As he moved through the establishment, he experienced constant difficulties navigating the space freely, as the layout restricted his ability to maneuver. This physical barrier not only caused discomfort

but also affected his autonomy inside the restaurant, limiting his experience and access to certain areas.

31.11.   Uneven Interior Flooring: Mr. Uriel Sepúlveda also identified that the flooring inside Willie's Bar & Restaurant has significantly deteriorated in some areas, particularly in the sections connecting different zones. Cracks and deep potholes compromised the uniformity of the surface, creating a considerable risk of tripping or losing stability. To ensure safety, floors must be even and free of irregularities that hinder movement. When attempting to move through these deteriorated areas, he constantly struggled to maintain stability, as the abrupt changes in level and pronounced cracks created a clear obstacle. This physical barrier not only caused discomfort but also increased the physical effort required to move within the establishment, negatively impacting his overall experience.

31.12.   Excessively High Counters: Mr. Uriel Sepúlveda identified that the counters at Willie's Bar & Restaurant were excessively high, making them difficult for him to use and forcing him to adopt uncomfortable positions to interact with staff. To perform any task at the counter, he had to stretch uncomfortably or lean in a risky manner, causing discomfort and increasing the likelihood of losing stability. Due to this barrier, he faced significant challenges in reaching the counter surface and engaging comfortably. The improper height prevented him from accessing the establishment's services without excessive effort, affecting his autonomy and turning a simple task into a frustrating and physically demanding experience.

31.13.   Counters Without Adequate Front Clearance: Mr. Uriel Sepúlveda also identified that the counters inside Willie's Bar & Restaurant lacked adequate front

clearance, preventing him from safely and comfortably positioning himself. To use the counter, he was forced to make unsafe maneuvers, such as leaning awkwardly or positioning himself sideways, compromising his stability and creating additional physical strain. The absence of a clear space underneath the counter limited his ability to approach it properly, making his access to the restaurant's services complicated and impractical. This barrier affected his comfort and independence, turning a basic interaction into an uncomfortable and physically challenging experience.

31.14.    Lack of Accessible Restroom Signage: Mr. Uriel Sepúlveda identified that Willie's Bar & Restaurant did not have clear signage indicating the presence of an accessible restroom. Proper signage is essential to ensure that individuals can quickly locate necessary facilities without unnecessary searching or uncertainty. The absence of clear and visible signage made it difficult for him to determine whether an accessible restroom was available, adding unnecessary frustration to his experience. Due to this lack of signage, he had to spend additional time and effort looking for a suitable restroom, causing discomfort and making his visit less convenient. This barrier created uncertainty and impacted his ability to access essential services in the establishment with ease.

31.15.    Narrow Restroom Dimensions: Mr. Uriel Sepúlveda also identified that the restroom inside Willie's Bar & Restaurant had extremely limited space, making it difficult for him to move comfortably. A restroom needs to have enough space to allow proper maneuvering without feeling restricted, yet in this case, the cramped dimensions significantly hindered his ability to use the facility safely and

independently. While inside, he struggled to move due to the tight space, which made simple tasks more complicated and physically demanding. The lack of adequate space not only affected his comfort but also increased the difficulty of using the restroom.

31.16.    Obstruction of Elements Inside the Restroom: Mr. Uriel Sepúlveda encountered significant obstructions inside the restroom, particularly a partition between the sink and the toilet. This layout forced him to leave his mobility device outside in order to use the toilet, creating a major inconvenience and safety concern. A restroom must be designed to allow users to maintain access to their mobility assistance at all times, yet in this case, the obstructive elements made it impossible. As a result, he was forced to perform unnecessary and uncomfortable maneuvers to access the toilet, making the experience difficult and unsafe. The obstruction not only compromised his ability to use the restroom comfortably but also increased the physical strain required for something as basic as using the toilet.

31.17.    Dispensers Positioned Too High: Mr. Uriel Sepúlveda also identified that the restroom dispensers in Willie's Bar & Restaurant were placed at an excessive height, making them difficult for him to reach. To be accessible, dispensers must be positioned at a height that allows users to access them without stretching uncomfortably or making unsafe movements. However, the placement of these dispensers forced him to reach up in an awkward and unstable manner. When attempting to use the dispensers, he had to extend beyond a comfortable range, which increased physical strain and made the simple task of retrieving soap or

paper towels unnecessarily difficult. This barrier impacted his ability to use the restroom independently and safely.

31.18.    Inaccessible Toilet Flush Button: Mr. Uriel Sepúlveda also identified that the toilet flush button inside Willie's Bar & Restaurant was not easily accessible. A properly designed restroom needs to have flush mechanisms positioned for effortless use, without requiring excessive reaching or awkward positioning. However, in this case, the button was placed in a way that made it difficult for him to activate it without discomfort. To flush the toilet, he had to make uncomfortable and unnatural movements, adding unnecessary effort to a simple task. This poorly designed element further limited his ability to use the restroom independently, impacting his comfort and overall experience at the establishment.

31.19.    Lack of Side and Rear Grab Bars in the Restroom: Mr. Uriel Sepúlveda identified that the restroom inside Willie's Bar & Restaurant lacked grab bars on the side walls and behind the toilet. To ensure safety and stability, a restroom should have these bars strategically placed, allowing users to support themselves when sitting down, standing up, or repositioning without the risk of losing balance. However, the absence of these essential elements made it difficult for him to use the toilet safely and comfortably. When attempting to use the restroom, he had to exert additional effort to stabilize himself, increasing discomfort and the risk of falls. The lack of grab bars compromised his autonomy within the establishment, turning a basic action into a physically demanding and unsafe experience.

31.20.    To ensure that Mr. Uriel Sepúlveda can access and enjoy Willie's Bar & Restaurant safely and comfortably, a series of improvements must be

implemented to eliminate the identified architectural barriers. The sidewalk in front of the establishment should be repaired to provide a continuous and even surface, ensuring that his route to the restaurant is safe and free from tripping hazards. Additionally, it is essential to widen the sidewalk space and enforce measures to prevent the illegal occupation of vehicles, allowing him to move without restrictions or the need to seek unsafe alternative routes. The access ramps also require urgent modifications. The ramp connecting the public sidewalk to the first level of the establishment should be leveled and have a firm, stable surface, eliminating irregularities caused by wear and small stones. Likewise, it is crucial to correct the slope of the ramps at both the entrance and interior of the restaurant, ensuring a gradual incline that does not require excessive physical effort or pose a risk of instability. Furthermore, the ramp connecting the exterior zone to the interior should be modified to remove the synthetic grass, replacing it with a non-slip material that provides greater security when moving. At the entrance of the establishment, removing the rugs will help eliminate uneven surfaces and potential tripping hazards, making access easier and obstacle-free. Regarding the interior spaces, it is essential to reorganize the furniture layout to widen the circulation area and prevent Mr. Uriel from having to make uncomfortable or risky maneuvers while moving around. Additionally, the flooring in certain areas of the restaurant should be repaired to eliminate cracks and deep potholes that hinder mobility and increase the risk of tripping.

31.21.    Regarding the furniture, it is recommended to replace the first-level chairs with options of accessible height that do not require excessive effort to sit safely. Also,

tables should be redesigned or replaced to remove the lower support bar, allowing him to position himself correctly without restrictions. Counters should be adjusted to a height that allows him to use them without needing to lean or stretch uncomfortably, and they should have adequate front clearance to ensure proper access without forcing him to perform dangerous movements. In the restroom area, it is crucial to install clear signage indicating the availability of an accessible restroom, preventing confusion and the need to search for alternatives. Additionally, the restroom should be expanded to provide sufficient maneuvering space and eliminate obstructive elements such as the partition between the sink and the toilet, ensuring that he can enter with his mobility device without difficulties. Dispensers should be repositioned at an accessible height so that he can use them without having to stretch or make uncomfortable movements. The toilet flush button should also be relocated to a position that makes it easier to use without additional effort. Finally, installing side and rear grab bars around the toilet is essential so that he can stabilize himself safely when sitting and standing, preventing the risk of falls or unnecessary strain. Implementing these improvements will not only allow Mr. Uriel to access and enjoy the restaurant with comfort and safety but will also help optimize the functionality of the space in general, ensuring that his experience at the establishment is fully satisfactory. Additionally, these modifications will remove the obstacles that made him feel uncomfortable and discouraged, preventing him from continuing to feel dissuaded from returning.

### *Responsibility of the Municipality of Yauco and Flor Amelia Inc. Dolce Salao*

32. Mr. Uriel Sepúlveda frequently visited Dolche Salao between January and February 2025, with his last visit to the establishment on March 4, 2025. He was drawn to the place due to its specialization in breakfast dishes and its variety of coffee options, such as a carefully prepared latte or fluffy pancakes served with fresh fruit and chocolate. However, he personally identified architectural barriers that significantly affected his experience.

33. The lack of proper accommodations caused him discomfort and required additional effort to move around and use certain areas of the establishment. As a result, this situation not only negatively impacted his experience but also discouraged him from returning, as he perceived that the space was not designed to ensure comfortable and safe access for his mobility. Mr. Sepúlveda has the intention to return to Dolche Salao within the next two months to enjoy a latte with pancakes again, but he is currently dissuaded from doing so due to the persistent presence of accessibility barriers. The obstacles listed below, which Mr. Sepúlveda personally faced and dealt with, not only caused considerable discomfort during his visit but also strengthened his decision to refrain from returning until these issues are addressed:

33.1. Sidewalk Ramp with Poor Signage: Mr. Uriel Sepúlveda identified that the ramp located on the sidewalk in front of Dolche Salao lacked proper signage, as it was neither painted nor clearly marked. The absence of visible demarcation not only made it difficult to identify but also left it vulnerable to being obstructed or even completely blocked by vehicles illegally parked in the adjacent area. To ensure safe access, ramps must have clear signage that prevents improper occupation and facilitates unobstructed use. During his visit, the ramp was partially blocked by a

parked vehicle, making access more difficult and forcing him to maneuver with extra caution. This situation compromised his mobility and turned a routine action into an uncomfortable and frustrating experience.

33.1.1.    As the entity responsible for maintaining public pathways, the municipality has the duty to ensure that ramps are clearly and visibly marked to prevent improper occupation and facilitate unobstructed access. The municipality's lack of action has allowed this deficiency to persist, compromising safety and accessibility for individuals with reduced mobility.

33.2.    Sidewalk Ramp with Incorrect Slope: Mr. Uriel Sepúlveda also identified that the sidewalk ramp had an improper slope, which significantly hindered its use. For a ramp to be functional and safe, its incline must be gradual, allowing for stable movement without requiring excessive effort. However, in this case, the steep slope of the ramp made both ascent and descent difficult, increasing the risk of losing balance. When attempting to use the ramp, he had to exert additional effort to maintain control and avoid potential slips, causing discomfort and a constant sense of insecurity. This barrier compromised his safe access to the establishment and turned a simple task into an unnecessarily challenging experience.

33.2.1.    The municipality is responsible for ensuring that public ramps are functional and safe, ramps must have a gradual, stable incline to allow safe and effortless movement, meeting the accessibility requirements established. However, the lack of intervention to correct the improper

slope has turned this ramp into a physical obstacle, hindering safe access to the establishment.

33.3.    Sidewalk Ramp in Deteriorated Condition: Mr. Uriel Sepúlveda also identified that the sidewalk ramp was in a state of significant disrepair, with cracks and potholes disrupting the continuity of the surface. To ensure safe access, a ramp needs to have a smooth and even surface without irregularities that pose a tripping or stability risk. However, in this case, the cracks and potholes made his movement uncomfortable and physically demanding. As he navigated the ramp, these imperfections made mobility more difficult, increasing the risk of tripping or unexpected obstructions. The lack of maintenance on the ramp negatively impacted his experience and safety, turning a simple access point into an unnecessary obstacle.

33.3.1.    To ensure safe access, the municipality is responsible for maintaining ramps with smooth, even surfaces, free from irregularities that could pose tripping or stability risks. Despite being aware of the deteriorated state of the ramp, the municipality has failed to act. This inaction has allowed the ramp to remain unsafe, directly affecting Mr. Uriel's mobility and safety, and preventing him from accessing the establishment freely and securely.

33.4.    Ramp Connecting Sidewalk to Exterior Zone with Incorrect Slope: Mr. Uriel Sepúlveda identified that the ramp connecting the sidewalk to the exterior zone of Dolche Salao had a slope that was too steep, making it difficult to use and creating a sense of instability. For a ramp to provide proper access, its incline must be gradual and steady, preventing unnecessary strain or the risk of losing

balance. However, the improper slope of this ramp made both ascent and descent challenging, requiring constant control and considerable physical effort. When attempting to use it, he struggled to maintain stability and had to make additional adjustments to avoid slipping. This lack of accessibility turned a simple and safe access point into an obstacle that caused discomfort and concern.

33.4.1.    The municipality is responsible for ensuring that public ramps meet accessibility standards, and despite being aware of the improper slope, it has failed to take the necessary corrective measures. This continued inaction has resulted in an unnecessary barrier for individuals with mobility challenges, hindering their ability to access the establishment safely.

33.5.    Ramp Connecting Sidewalk to Exterior Zone with Uneven Surface: Mr. Uriel Sepúlveda also noticed that the ramp connecting the sidewalk to the exterior zone of the establishment was in a deteriorated state. The surface was filled with cracks, potholes, and indentations that disrupted the smoothness of the path, making movement difficult. For a ramp to be safe, its surface must be smooth and even, without defects that could cause tripping or interfere with mobility. As he attempted to cross the ramp, he encountered difficulties maintaining stability, as the uneven terrain affected his ability to move safely and increased the risk of stumbling or unexpected obstructions. The lack of proper maintenance not only made the access uncomfortable but also turned it into a physically demanding and unsafe experience.

33.6.    Tables Inaccessible Due to Lower Support Bar Placement: Mr. Uriel Sepúlveda identified that the tables inside Dolche Salao had a design that prevented him from comfortably positioning himself due to the presence of a lower support bar. This structure blocked the necessary space for proper positioning, making access difficult and limiting his comfort when using the table. During his visit, he attempted to sit at various tables, but the obstruction made it impossible to position himself correctly, resulting in an uncomfortable and impractical experience. The presence of this support bar forced him to seek alternative positions that did not provide him with stability or comfort, affecting his ability to enjoy his time at the establishment.

33.7.    Excessively High Counters: Mr. Uriel Sepúlveda also identified that the counters inside Dolche Salao were excessively high, making them difficult to use and forcing him to adopt uncomfortable positions to interact with staff. To perform any task at the counter, he had to stretch awkwardly or lean in an unsafe manner, causing discomfort and additional strain. The improper height of the counters affected his ability to complete basic interactions easily, turning a simple task into a frustrating and physically demanding experience. This barrier limited his autonomy within the establishment and created an unnecessary sense of dependence.

33.8.    No Accessible Ramp to the Interior Zone: Mr. Uriel Sepúlveda identified that the entrance to the interior zone of Dolche Salao lacked an accessible ramp, preventing him from entering independently. Without a proper mobility option, his only alternative was to rely entirely on assistance from others. This barrier

severely restricted his experience, as he was unable to move freely within the restaurant or access all available areas. The lack of a ramp not only made mobility difficult but also made him feel excluded from that space.

33.9.   Entrance Obstructed by a Rug: Mr. Uriel Sepúlveda also identified that the entrance to Dolche Salao was obstructed by a rug, creating a mobility barrier. A safe entryway needs to be free of elements that cause uneven surfaces or instability, but in this case, the presence of the rug made entering the establishment more difficult by creating resistance and affecting his stability. When attempting to enter, the material and placement of the rug made movement uncomfortable and required additional effort to navigate the obstacle. This obstruction turned a simple action, such as entering the establishment, into an inconvenient and impractical experience.

33.10.  Narrow Circulation Space Due to Element Arrangement: Mr. Uriel Sepúlveda also noticed that the circulation space inside Dolche Salao was excessively reduced due to the arrangement of furniture and other elements in the area. To move around, he had to make uncomfortable maneuvers and exert extra effort to avoid obstacles that restricted his mobility. This barrier not only made movement difficult but also created discomfort by preventing him from navigating the space smoothly. The organization of the interior limited his ability to fully enjoy his experience, turning a simple movement through the restaurant into an unnecessarily complicated task.

33.11.  Restrooms Without Accessibility Signage: Mr. Uriel Sepúlveda identified that the restrooms inside Dolche Salao lacked clear signage indicating the presence of an

accessible restroom. The lack of proper signage made it difficult for him to locate the restroom, causing confusion and requiring him to ask staff or search the area before being able to enter. The absence of visible information caused an unnecessary delay, affecting his convenience and making the process less efficient. Although this barrier did not prevent him from using the restroom, it turned a simple action into a less practical and fluid experience.

33.12.   Restroom Entrance Too Narrow: Mr. Uriel Sepúlveda also identified that the restroom entrance inside Dolche Salao was excessively narrow, making it difficult for him to enter. For a properly designed entrance, it is necessary to allow unrestricted passage, but in this case, the limited space made movement challenging and forced him to maneuver with difficulty. When attempting to enter, the narrow access caused discomfort and required additional effort, compromising his stability and increasing the risk of bumping into obstacles. This barrier limited his independence and turned a simple action into a frustrating and challenging task.

33.13.   Restroom with Limited Space: Mr. Uriel Sepúlveda identified that the restroom inside Dolche Salao was extremely small, significantly affecting his experience and comfort. The lack of sufficient space prevented him from moving freely, and due to this limitation, he was forced to leave his mobility device outside in order to enter and use the facilities. This situation not only caused significant discomfort but also compromised his stability and safety, as he had to perform risky maneuvers to position himself without his support device. The cramped interior made every movement difficult and required additional physical effort.

The lack of maneuvering space prevented him from properly positioning himself, making it harder to use essential elements such as the sink or toilet. This barrier created a frustrating experience, as the restroom did not provide the necessary conditions for comfortable and safe use. The inadequate space made the restroom not only uncomfortable but practically inaccessible, limiting his autonomy and forcing him to rely on improvised solutions just to use it.

33.14.   Inaccessible Toilet Flush Button: Mr. Uriel Sepúlveda also identified that the toilet flush button inside Dolche Salao was placed in an inaccessible location, making it difficult for him to use. To ensure a comfortable experience, the flush mechanism has to be positioned in a way that allows easy activation without requiring awkward or strenuous movements. However, in this case, the button's placement required forced and unnatural movements to activate it, causing discomfort and additional effort. This barrier turned a simple action into an unnecessary complication, affecting his comfort and independence in the restroom.

33.15.   Restroom Without Rear and Side Grab Bars: Mr. Uriel Sepúlveda also identified that the restroom inside Dolche Salao lacked grab bars on the rear and side walls near the toilet. These elements are essential for ensuring stability and safety when sitting down or standing up, preventing the risk of losing balance. During his visit, the absence of these bars forced him to exert additional effort to stabilize himself, which caused discomfort and increased the risk of falls. The lack of these support features compromised his experience and safety, making the use of the restroom unnecessarily difficult and risky.

33.16.  To ensure that Mr. Uriel Sepúlveda can access and move safely and comfortably within Dolche Salao, it is essential to implement a series of improvements to eliminate the identified architectural barriers. First, the ramp located on the sidewalk in front of the establishment must be properly marked with visible paint and clear demarcations to prevent illegal vehicle occupation. This will ensure that the ramp remains unobstructed at all times, allowing for safe and unrestricted access. Additionally, the ramp's slope must be corrected to meet appropriate standards, ensuring a smooth transition without requiring excessive effort or compromising stability. Its surface should also be repaired to remove cracks and potholes that hinder mobility and increase the risk of tripping. The ramp connecting the sidewalk to the exterior zone of the establishment also requires urgent modifications. Its incline must be adjusted to ensure a safe ascent and descent without causing instability or requiring forced maneuvers. Likewise, the surface must be leveled and repaired to eliminate irregularities that currently affect mobility. This will allow for a seamless entry into the restaurant without unnecessary obstacles. Inside the establishment, accessibility improvements must be made to tables and counters. Tables should be redesigned or replaced to remove the lower support bar that currently obstructs proper positioning, allowing him to sit comfortably without restrictions. Counters, on the other hand, should be adjusted to an accessible height to prevent him from having to stretch or lean uncomfortably to interact with staff. Additionally, they should have sufficient front clearance to allow proper access without requiring complicated maneuvers. Another critical aspect is the entrance to the interior zone of the establishment,

which currently lacks an accessible ramp. To eliminate this barrier, a ramp with the proper incline must be installed to allow him to enter without relying on assistance from others or being forced to remain in a restricted area of the restaurant. The entrance should also remain free of obstacles, and it is recommended that the rug currently in place be removed to prevent resistance and difficulty in accessing the space. Additionally, the interior layout should be reorganized to ensure wider walkways that allow for unrestricted movement without requiring uncomfortable maneuvers.

33.17. Regarding the restroom area, it is crucial to install clear signage indicating the availability of an accessible restroom, preventing confusion and ensuring immediate identification. The restroom entrance must be widened to guarantee easy access, and the interior space must be redesigned to provide adequate mobility so that he does not have to leave his mobility device outside. This will ensure that he can use the facilities without compromising his stability or resorting to unsafe maneuvers. Furthermore, the toilet flush button should be repositioned to an accessible location, eliminating the need for awkward movements or additional effort. Lastly, side and rear grab bars must be installed around the toilet to provide stability and security when sitting and standing, reducing the risk of falls or discomfort. Implementing these improvements will not only allow Mr. Uriel to access and enjoy the restaurant with comfort and safety but will also optimize the overall functionality of the space. By removing the obstacles that negatively impacted his experience and made him feel uncomfortable, these modifications will ensure that he no longer feels dissuaded

from returning, giving him the confidence that he can enjoy the establishment without barriers or limitations.

**D. Discrimination in Municipality of Salinas and other businesses against Mr. Uriel Sepúlveda due to his disability**

34. Salinas is another municipality that Mr. Sepúlveda enjoys visiting, primarily because of its coastal atmosphere and vibrant culinary scene. The town offers a relaxing and inviting environment where he can unwind and enjoy quality meals in a setting that is distinct from other places he frequents. The appeal of Salinas lies in its waterfront dining options and the unique charm of its local establishments, which provide him with an enjoyable experience that he looks forward to.

35. When he visits Salinas, he particularly enjoys spending time at restaurants that offer a scenic view and a comfortable ambiance. He has had pleasant experiences dining at Mojito Grill, a restaurant where he has been able to enjoy flavorful dishes in a lively setting. Another one of his preferred spots is Restaurante El Dorado, where he appreciates the seafood options and the welcoming atmosphere that makes him feel at ease.

36. For Mr. Sepúlveda, these visits to Salinas are more than just outings; they represent an opportunity for him to step away from his daily routine and enjoy a change of scenery. The town's coastal charm, combined with its excellent dining options, makes it an appealing destination whenever he wants to relax and treat himself to a good meal. However, despite his appreciation for what Salinas has to offer, he has found that accessibility barriers significantly impact his ability to fully enjoy his visits.

37.    One of the most frequent challenges he faces in Salinas is the inaccessibility of certain restaurant entrances. Many establishments have steps at the entrance, making it difficult or impossible for him to enter without assistance. The sidewalks in various parts of the town also present significant challenges, as they are often in poor condition or obstructed, forcing him to take alternative routes that may not always be safe. The parking facilities in Salinas similarly lack proper accommodations, making it difficult for him to transition from his vehicle to the businesses he wants to visit.

38.    Even when he manages to enter a restaurant, he continues to encounter obstacles inside. Some establishments have high counters that make it difficult for him to interact with the staff comfortably. Others have seating arrangements that do not accommodate individuals with mobility impairments, forcing him to choose between sitting in an uncomfortable position or leaving altogether. The restroom facilities in many businesses also fail to meet accessibility standards, as they often lack grab bars, have limited maneuvering space, or have sinks and dispensers placed at heights that make them difficult to use.

39.    These barriers make it difficult for him to enjoy his time in Salinas as much as he would like. Instead of focusing on the food, the atmosphere, and the company, he often finds himself struggling to navigate spaces that were not designed with accessibility in mind. While Salinas has a lot to offer, the persistent architectural barriers create unnecessary difficulties that diminish his ability to fully experience the town's offerings.

40.    Mr. Sepúlveda feels discouraged from visiting several places located in Salinas because he knows he cannot enjoy them due to the architectural barriers present at those locations:

### _Responsibility of the Municipality of Salinas and RMFS Corporation_
### _Mojito Grill and Sports Bar_

41.    On March 7, 2025, Mr. Uriel Sepúlveda visited Mojito Grill and Sports Bar, renowned for its vibrant atmosphere and diverse menu featuring international cuisine and over ten flavors of mojitos. It was not his first time at the establishment, as he had previously dined there on december 2024, and looked forward to returning. During this visit, he was particularly eager to try their signature grilled shrimp platter, known for its fresh ingredients and unique seasoning. However, he encountered several architectural barriers that hindered his ability to navigate the establishment safely and comfortably, significantly detracting from his overall dining experience.

42.    Mr. Sepúlveda had planned to return in either April or May 2025 to try other dishes from the menu and enjoy the restaurant's ambiance, but the persistent accessibility barriers have completely dissuaded him. The difficulties he faced not only made his visit frustrating but also signaled that future visits would be just as challenging, making it impossible for him to enjoy the restaurant on an equal footing with other patrons. The barriers Mr. Sepulveda encountered during his visit include:

42.1.    Narrow and Obstructed Front Sidewalk. Mr. Uriel Sepúlveda identified that the sidewalk in front of Mojito Grill and Sports Bar was excessively narrow and further obstructed by overgrown grass and garden sections. Due to his reliance on a walker and his difficulty maneuvering in tight spaces, he struggled to move along the sidewalk without his walker scraping against the edges or being forced onto uneven terrain. The obstructions made it even more challenging for him to maintain stability, causing discomfort and making his approach to the restaurant unnecessarily difficult.

42.1.1.    Because the sidewalk in front of Mojito Grill and Sports Bar is part of the public infrastructure, its maintenance and accessibility fall under the responsibility of the Municipality of Salinas. By allowing the sidewalk to remain excessively narrow and obstructed by overgrown grass and garden sections, the municipality has failed to provide a safe and accessible pedestrian path. This lack of proper maintenance directly impacts Mr. Uriel Sepúlveda, as he cannot navigate the sidewalk comfortably with his walker and is forced to struggle through an unsafe and inadequate passage. The failure to ensure clear and properly maintained sidewalks prevents him from reaching the restaurant safely and independently, discouraging him from returning.

42.2.    Unmarked, Poorly Positioned, and Narrow Ramps. While navigating the area, Mr. Sepúlveda observed several barriers at the ramps at each street corner of the sidewalk in front of Mojito Grill and Sports Bar. These accessibility failures made reaching the restaurant even more challenging and physically taxing for him, further limiting his ability to navigate the area independently and without pain.

42.2.1.    The ramps lacked proper signage, making them difficult to locate. Due to his lumbar disc damage and bilateral radiculopathy, he experiences severe pain and nerve-related weakness in his lower extremities, making it essential for him to identify and access ramps quickly to avoid prolonged standing or unnecessary strain.

42.2.2.    Additionally, instead of being positioned at natural crossing points, the ramps were placed further down the street, forcing him to take a longer

and more hazardous route. Given his chronic osteoarthritis and osteoporosis, which compromise his stability and increase his risk of fractures, this extended detour significantly heightened his discomfort and physical exertion.

42.2.3.    The ramps were also too narrow for him to maneuver safely with his walker, which is essential for providing him with the stability he lacks due to his lumbar radiculopathy and chronic osteoarthritis. The restricted space forced him to make precise movements, requiring extra effort to maintain balance despite his nerve-related weakness and joint degeneration.

42.2.4.    Since these ramps are located on public sidewalks, their placement, visibility, and usability fall under the responsibility of the Municipality of Salinas. By failing to properly mark these ramps and positioning them away from natural crossing points, the municipality has created unnecessary hazards for Mr. Uriel Sepúlveda. The narrow design and inconvenient placement of the ramps make access to the restaurant unnecessarily difficult. This lack of proper planning and maintenance restricts his ability to move safely through the area and leaves him discouraged from returning, knowing that he will continue to face these accessibility barriers.

42.3.    High Step Without Ramp at the Porch. Mr. Uriel Sepúlveda identified that the porch area before reaching the entrance of Mojito Grill and Sports Bar had a high step, requiring him to lift his walker to proceed. Due to his lumbar spine damage, bilateral radiculopathy, and chronic osteoarthritis, lifting the walker was

physically straining, causing him pain and instability. Without an alternative entrance with a ramp, he struggled to enter the restaurant safely and had to rely on assistance, making the experience frustrating and exhausting.

42.4.    Inaccessible Entrance Door. Upon reaching the entrance door, Mr. Sepúlveda encountered it had a pull-open mechanism that he could not operate independently while using his walker. Given his limited mobility and difficulty balancing while exerting force, he had to request assistance to hold the walker steady and pull the door open, making the entry process unnecessarily difficult. This lack of an automatic or easily operable door significantly delayed his access and added discomfort.

42.5.    Inaccessible Table Design and Layout. Mr. Sepúlveda identified that the restaurant's tables had a central support with extending legs, which prevented him from positioning his walker close enough to sit comfortably. Given his chronic osteoarthritis and lumbar radiculopathy, he experiences significant joint stiffness and nerve-related weakness, making it difficult for him to adjust his posture or support himself without his walker nearby. The lack of adequate space forced him to strain his already compromised spine and lower extremities, increasing his discomfort and making it more challenging for him to maintain stability while attempting to sit.

42.6.    Inaccessible Bar Counter. While exploring the dining options, Mr. Sepúlveda observed that the bar counter lacked sufficient clearance underneath for his walker, making it impossible for him to position himself comfortably. Additionally, the only available seating consisted of high bar stools, which he

could not use due to his chronic osteoarthritis, lumbar radiculopathy, and limited spinal mobility. The presence of these stools further obstructed the path, preventing him from approaching the counter with his walker. Given his difficulty maintaining balance and the need for stable support while seated, these barriers effectively excluded him from fully accessing this area.

42.7.    Narrow Door to Second Dining Area. Mr. Sepúlveda identified that the entrance to a secondary dining area had only one door open, making the passage too narrow for him to enter comfortably with his walker. Due to his lumbar radiculopathy and osteoarthritis, he requires ample space to maneuver without straining his joints or risking imbalance. The restricted entry forced him to struggle through the entryway, further complicating his navigation through the restaurant.

42.8.    Extremely Narrow Hallway to Restroom. The hallway leading to the restroom was excessively narrow, barely accommodating Mr. Sepúlveda's walker. He had to carefully adjust his movements to avoid bumping into walls, which was particularly challenging due to his limited mobility and difficulty maneuvering in tight spaces. This narrow passage made it unnecessarily difficult for him to reach the restroom.

42.9.    Restroom Sink Counter Too Thick. While using the restroom, Mr. Sepúlveda noted that although the sink had open space underneath, the countertop above it was too thick, preventing him from getting close enough with his walker to wash his hands properly. Due to his limited ability to lean forward without pain, this setup made handwashing an inconvenient and uncomfortable task.

42.10.   Improperly Positioned Toilet. Upon entering the restroom stall, Mr. Sepúlveda noticed that the toilet was positioned too far from the grab bar on the wall, making it difficult for him to use the necessary support when transferring from his walker to the toilet.

42.11.   Improperly Positioned Fixtures. The toilet paper dispenser was placed too far from the toilet, requiring Mr. Sepúlveda to stretch beyond his comfortable range of motion. Due to his lumbar radiculopathy and osteoarthritis, he has limited flexibility and difficulty maintaining stability, making this placement especially problematic.

42.12.   Difficult-to-Use Door Lock Mechanism. While attempting to close the restroom door, Mr. Sepúlveda struggled with the locking mechanism, which required more dexterity than he could manage with one hand. Due to his osteoarthritis and nerve-related weakness, he has reduced grip strength and coordination, making it difficult for him to operate small or complex mechanisms. This design flaw created an additional barrier, further limiting his ability to use the restroom independently and safely.

42.13.   To address these barriers, the Municipality of Salinas must widen the sidewalk in front of the restaurant, remove obstructions like overgrown grass, and ensure proper maintenance for a stable surface. It must also relocate and widen the ramps to align with pedestrian crossings and add proper signage. Mojito Grill and Sports Bar must install a ramp at the entrance, replace the door with an automatic or push-button-operated one, and rearrange tables to ensure adequate spacing, including at least one accessible table. The bar counter should have a lowered

section with space underneath, and bar stools must be repositioned to prevent obstruction. The narrow hallway to the restroom should be widened, and the restroom must be modified by adjusting the sink counter thickness, repositioning the toilet and grab bars, relocating the toilet paper dispenser, and replacing the door lock with a more user-friendly mechanism. These improvements would allow Mr. Sepúlveda to navigate the restaurant safely, enjoy his visit without physical strain, and feel encouraged to return.

### *Responsibility of the Municipality of Salinas and A Salir, Inc.*
### *Restaurante El Dorado*

43.    On March 2025, Mr. Uriel Sepúlveda visited El Dorado, a well-known seafood restaurant celebrated for its fresh, locally caught fish and traditional Puerto Rican cuisine. The restaurant's commitment to quality, with daily catches such as "cartucho", "arraya", "peto", "peje puerco", and "mero cabrilla", makes it a standout destination for seafood lovers. Its coastal setting, with views of the bay, creates a relaxed and inviting atmosphere, enhancing the dining experience. Having previously visited in December 2024, Mr. Sepúlveda had planned to return in June 2025 during summer to further explore the menu and enjoy the ambiance. Drawn by the restaurant's reputation and the opportunity to enjoy freshly prepared seafood, Mr. Sepúlveda ordered a lemonade and a flancocho, eager to experience the flavors that make El Dorado a favorite among locals and visitors alike. However, despite the exceptional food and ambiance, his visit was significantly impacted by accessibility barriers that made navigating the restaurant challenging and uncomfortable. The following barriers not only caused frustration and difficulty during his visit but also discouraged him from returning:

43.1.    Deteriorated Sidewalk. Mr. Sepúlveda identified that the sidewalk leading to Restaurante El Dorado is in extremely poor condition, with large cracks, unpaved sections, overgrown grass, fallen branches, and trash cans obstructing the path. Given his lumbar disc damage, bilateral radiculopathy, osteoporosis, and chronic osteoarthritis, the unstable and uneven surface severely compromises his balance and increases his risk of falls. Navigating this hazardous terrain with his walker not only amplifies his pain but also strains his already limited physical capabilities.

43.1.1.    Illegal Parking on the Sidewalk. Additionally, parked vehicles on the sidewalk completely block the pathway, forcing Mr. Sepúlveda to step off and walk alongside moving traffic. Given his lumbar disc damage, bilateral radiculopathy, osteoporosis, and chronic osteoarthritis, his stability is severely compromised, making this detour extremely risky and aggravating his pain and discomfort.

43.1.2.    Obstructive Establishment Sign on the Sidewalk. An establishment sign positioned directly in the pedestrian pathway further disrupts his route, requiring constant adjustments of his walker. With his limited flexibility and nerve-related weakness due to his health conditions, these continuous maneuvers intensify his instability and discomfort, making safe navigation even more challenging.

43.1.3.    Since this sidewalk is part of the public infrastructure, it falls under the responsibility of the Municipality of Salinas. The Municipality has a duty to maintain public sidewalks, and to regulate and enforce their proper use

to ensure they remain accessible to all pedestrians. However, it has failed to ensure that this pathway is safe and accessible for Mr. Sepúlveda as a pedestrian with mobility impairments. The municipality's neglect in addressing the deteriorated condition of the sidewalk, coupled with its failure to prevent vehicles from completely obstructing the pathway, has made it nearly impossible for Mr. Sepúlveda to navigate the area with his walker. As a result, he has been effectively denied a safe and independent route to the restaurant, making his visit stressful, exhausting, and ultimately discouraging him from returning.

43.2.   No Access Ramps at Street Corners. Mr. Sepúlveda identified that there were no access ramps at the street corners near the restaurant, making it extremely difficult for him to transition from the sidewalk to the road, which was physically demanding and unsafe given his mobility limitations. The ban condition of the sidewalk along with the absence of ramps forced him to navigate through an area not designed for pedestrian crossings, exposing him to unnecessary risks and making the visit more frustrating and exhausting.

43.2.1.   The absence of access ramps at the street corners reflects a clear failure by the Municipality of Salinas to uphold basic accessibility standards. Without these ramps, Mr. Uriel Sepúlveda was forced to take unsafe and physically demanding detours to continue his route. The municipality's neglect in providing proper curb cuts has created an unnecessary and avoidable barrier, preventing him from moving freely and making his visit to the restaurant an unduly difficult experience.

43.3.    No Designated Accessible Parking. After observing the poor condition of the sidewalk, he realized that using the pedestrian path to reach the restaurant would be extremely unsafe and impractical. Given these conditions, he had no choice but to opt for arriving by car and parking as close as possible to the entrance. However, upon arrival, Mr. Sepúlveda noted that Restaurante El Dorado had no designated accessible parking spaces. This forced him to park in a regular space, which did not provide the necessary room to exit his vehicle safely with his walker. Without an appropriately marked and accessible parking area, he had to take extra steps on uneven terrain before reaching the entrance, adding unnecessary physical strain and difficulty to his visit.

43.4.    Lack of Interior Accessibility. Mr. Uriel Sepúlveda identified that he was unable to access the interior of Restaurante El Dorado, as there was no accessible entrance available to the second floor. Instead, staff directed him to sit at an outdoor table. Due to his mobility limitations and reliance on a walker, being restricted to an outdoor seating area not only made him feel excluded from the main dining space but also exposed him to discomfort from weather conditions, making his experience frustrating and inconvenient.

43.5.    Unstable and Inaccessible Seating. Upon reaching the outdoor seating area, Mr. Sepúlveda observed that the chairs provided were highly unstable due to their thin metal rod legs. He struggled to sit down safely, as the chair lacked armrests, making the transition from his walker extremely difficult. The low seat height and the absence of lumbar support exacerbated his discomfort, as he was unable to

maintain proper posture. Given his limited ability to bend and support himself, this seating arrangement made it challenging for him to dine comfortably.

43.6.  Inaccessible Pathway to the Restroom. When attempting to access the restroom, Mr. Sepúlveda found that the designated pathway was completely inaccessible. He had to walk through a parking area with parked cars obstructing his path. The terrain was cracked, unstable, and uneven, making it difficult for him to maneuver safely with his walker. Additionally, metal poles supporting the carport structure were placed in the middle of the pathway, further blocking his access and requiring him to navigate around them with great difficulty.

43.7.  Unsecured Rug and Loose Gravel Obstruction at Restroom Entrance. Upon reaching the restroom, Mr. Sepúlveda encountered multiple obstacles that made entry extremely difficult. A thick, unsecured rug at the entrance, placed over loose gravel, caused his walker to get stuck, requiring him to adjust it manually to proceed.

43.8.  Step at the Doorway. After overcoming previous obstacles, Mr. Sepúlveda encountered a step at the doorway that made smooth entry impossible. Due to his chronic osteoarthritis and lumbar radiculopathy, the effort required to lift or adjust his walker over the step places undue strain on his stability, increasing his discomfort and risk of imbalance.

43.9.  Narrow Entrance at the Restroom. To enter and exit the restroom, Mr. Sepúlveda had to manually reposition his walker to fit through a narrow doorway that repeatedly became stuck. His limited upper body strength and reduced

coordination, exacerbated by his musculoskeletal conditions, make this maneuver particularly exhausting and frustrating.

43.10.   Inaccessible Door Handle. Mr. Sepúlveda noted that the restroom door had a round doorknob, requiring a twisting motion to open. Due to his limited grip strength and dexterity, he struggled to turn the knob while also managing his walker. This barrier made entering and exiting the restroom unnecessarily difficult, causing him additional discomfort and requiring extra effort to complete a basic task.

43.11.   Lack of Accessible Sink Space. While attempting to use the restroom sink, Mr. Sepúlveda realized that the design prevented him from getting close enough with his walker. The sink had no open space underneath, forcing him to lean forward uncomfortably to wash his hands. Given his limited flexibility and balance issues, this setup made it difficult for him to complete a simple task independently, increasing his frustration.

43.12.   Obstructive Trash Bin near the Sink. Additionally, a trash bin placed directly in front of the sink further obstructs access, making it nearly impossible for him to use the sink while standing with his walker. Given his limited stability and reduced strength, this obstruction significantly heightens his difficulty in performing basic tasks safely and independently.

43.13.   Limited Maneuverability in Cramped Interior. Inside the restroom, Mr. Sepúlveda struggled to maneuver in an extremely narrow space that barely accommodated his walker. His chronic osteoarthritis and lumbar radiculopathy make turning and

repositioning particularly challenging, forcing him to repeatedly adjust his position just to access different fixtures.

43.14.   Lack of Grab Bars. Mr. Sepúlveda observed that the restroom lacked grab bars around the toilet, making it unsafe for him to transition from his walker to the seat. With his lumbar radiculopathy and chronic osteoarthritis compromising his balance and stability, the absence of these supports leaves him without a secure way to steady himself, significantly increasing the difficulty of using the facility.

43.15.   After experiencing multiple accessibility barriers, Mr. Sepúlveda attempted to pay for his meal, but the restaurant owner refused to charge him. While he understood that this was an attempt to compensate for the difficulties he faced, he found the gesture uncomfortable, as it highlighted the fact that he had been unable to enjoy a typical dining experience. Rather than receiving a complimentary meal, he would have preferred to be able to access the restaurant like any other patron and pay for his order without facing undue obstacles. This experience left him feeling discouraged about returning, as he does not wish to rely on special treatment to accommodate the restaurant's lack of accessibility.

43.16.   To ensure that Mr. Sepúlveda can safely and independently access Restaurante El Dorado, several accessibility improvements must be implemented. The Municipality of Salinas must repair and maintain the public sidewalk, ensuring it is paved, free of obstructions, and properly marked for pedestrian use. Vehicles should be prohibited from parking along the entire sidewalk, and clear pedestrian pathways must be enforced. Properly positioned and marked access ramps must be installed at street corners to allow safe transitions between the sidewalk and the

road. The restaurant must designate and properly mark accessible parking spaces with adequate space for maneuvering a walker. Additionally, an accessible entrance to the restaurant's interior must be provided, and the outdoor seating area should include stable chairs with armrests and proper lumbar support. The pathway to the restroom must be clear of obstacles, with a stable, even surface. The restroom entrance must be modified by removing the thick rug, widening the doorway, and eliminating the step. The doorknob must be replaced with a lever-style handle for ease of use. Inside the restroom, a properly designed sink with sufficient knee clearance must be installed, and grab bars must be placed around the toilet to provide necessary support. The trash bin must be relocated to avoid blocking access. These modifications would eliminate the barriers that made Mr. Sepúlveda's visit difficult, unsafe, and exhausting, allowing him to return to the restaurant and enjoy the dining experience without unnecessary obstacles.

### *Responsibility of the Municipality of Salina and  WV Destination Pr LLC - Full Moon restaurant situated in the Hotel Vista Bahia*

44.    Mr. Uriel Sepúlveda enjoys seafood in a pleasant setting with beautiful views, making Full Moon, located within Hotel Vista Bahía, an appealing choice for him. He appreciates the quality of the food, the relaxed atmosphere, and the stunning view the place offers. Additionally, he highlights the excellent service and the staff's cordial treatment, as well as the well-prepared cocktails and reasonable prices.  Mr. Uriel Sepúlveda has dined at Full Moon multiple times, specifically in November 2024, as well as in January and February 2025. Throughout these visits, he has consistently faced architectural barriers that complicate his access to the restaurant. He visited the restaurant in March 2025,

which was particularly difficult due to these obstacles, making his visit less enjoyable. As a result, he feels discouraged from returning.

45.    He wants to visit the restaurant again within the next three months because he enjoys the freshness of the seafood, the scenic views, and the tranquil ambiance that allows him to relax and share special moments. He also values the attentive service and the variety of drinks that complement his dining experience. However, the architectural barriers make him feel dissuaded from doing so. The barriers he is aware of are the following:

45.1.    Uneven and Cracked Pavement on Sidewalks: Mr. Uriel personally identified the uneven and cracked pavement on the sidewalks leading to the restaurant. As he maneuvered with his walker, the irregular surface forced him to take cautious steps, making his movement slow and unstable. The uneven ground aggravated his lumbar pain, causing discomfort with each step. The strain of trying to maintain balance increased his physical exhaustion, making the simple act of walking to the restaurant unnecessarily difficult. Due to this experience, he feels discouraged from returning to the establishment.

45.1.1.    The Municipality of Salinas is responsible for maintaining the sidewalks leading to Full Moon restaurant, located within the Vista Bahía Hotel. However, the presence of cracked pavement and an uneven surface has made it difficult for Mr. Uriel Sépulveda to navigate the area safely. These conditions create obstacles that hinder his mobility, increasing the risk of accidents and making access to the restaurant more challenging. The municipality's failure to address these issues has further restricted his ability to move independently in the area.

45.2.    Damaged and Irregular Parking Lot Surface: Upon arriving at the restaurant, Mr. Uriel encountered a severely deteriorated parking lot with cracks and holes. The unstable ground caused his walker to shake, forcing him to exert extra effort to maintain stability. The impact of navigating such an uneven surface intensified his joint pain, particularly in his lower back and sacroiliac joints. The struggle to move safely from his vehicle to the restaurant entrance resulted in significant discomfort and frustration. As a result, he feels dissuaded from visiting the location again.

45.3.    Lack of a Designated and Marked Accessible Route: Mr. Uriel also noticed the absence of a designated and marked accessible route from the parking lot to the restaurant. Without clear guidance, he was forced to navigate through uneven and potentially hazardous areas, increasing the risk of missteps and added strain on his back. The uncertainty of finding a safe path heightened his discomfort and frustration, making his journey unnecessarily stressful. This lack of accessibility left him feeling unwelcome, discouraging him from returning to the establishment.

45.4.    Trash Bins Blocking the Access Route: While making his way toward the entrance, Mr. Uriel had to maneuver around large blue trash bins obstructing the access route. Their placement forced him to take awkward detours, which increased the pressure on his lower back and joints. The need to repeatedly adjust his walker's position to bypass the bins caused further strain, making his mobility more challenging and painful. This unnecessary obstacle contributed to his discomfort, leaving him reluctant to visit the restaurant again.

45.5.    Obstructed Circulation Due to Table Distribution: Once inside, Mr. Uriel identified that the arrangement of tables made circulation difficult. The narrow pathways between tables forced him to navigate tight spaces with his walker, requiring constant adjustments and extra effort. These movements placed additional strain on his already sensitive lumbar region, worsening his pain. The frustration of struggling to move comfortably within the restaurant made the experience unpleasant, discouraging him from returning.

45.6.    Tables with a Low Support Bar: Mr. Uriel also observed that the tables had a low support bar near the floor, which prevented him from comfortably positioning his feet. This forced him to sit in an unnatural posture, increasing tension in his back and hips. The discomfort became more pronounced as he remained seated, making it difficult for him to enjoy his meal. The physical strain caused by this poorly designed feature left him disheartened about returning to the establishment.

45.7.    Excessively High Wooden Bar: During his visit, Mr. Uriel attempted to use the wooden bar but found it too high to be functional for him. The elevated surface made it difficult for him to rest his arms comfortably, requiring him to overextend and causing additional stress on his shoulders and back. The discomfort of trying to adjust to an impractical height made the experience frustrating and physically taxing. Due to this, he does not feel encouraged to return to the restaurant.

45.8.    Shallow Wooden Bar: In addition to being too high, the wooden bar was also too shallow for Mr. Uriel to position himself properly. This lack of depth prevented him from securely placing his walker in front of him while sitting, forcing him

into an uncomfortable position. The inadequate space made it impossible for him to sit without straining his back, leading to unnecessary physical discomfort. The frustration of dealing with this issue has discouraged him from visiting the establishment again.

45.9.    Heavy Restroom Door: Mr. Uriel encountered difficulty accessing the restroom due to the excessively heavy door. The effort required to push it open caused him pain in his lumbar region and shoulders. Holding the walker while attempting to manage the door made the task even more strenuous, increasing his physical discomfort. The unnecessary struggle of entering the restroom contributed to his dissatisfaction, making him hesitant to return.

45.10.    Reduced Space Inside the Restroom: Once inside the restroom, Mr. Uriel found the space too confined to maneuver comfortably with his walker. The tight area forced him into awkward positions, increasing pressure on his joints and lumbar spine. The lack of sufficient space made every movement a challenge, worsening his discomfort and frustration. This negative experience left him feeling discouraged about revisiting the restaurant.

45.11.    Trash Bin Blocking Access to the Toilet: Mr. Uriel also identified a trash bin, which is gray and located on the right side of the toilet, obstructing access to the toilet, which forced him to twist his body unnaturally to reach it. This movement aggravated his lumbar pain and made it difficult for him to stabilize himself. The struggle to position himself properly caused unnecessary strain, turning a simple action into a painful task. This inconvenience has made him unwilling to return to the establishment.

45.12.   Toilet Paper Dispenser Blocking the Left Support Bar:While attempting to use the support bar in the restroom, Mr. Uriel discovered that the toilet paper dispenser obstructed it. The lateral support bar, which is gray and located on the left side of the toilet, was blocked by the black toilet paper dispenser positioned directly below it. This obstruction made it difficult for him to grip the bar properly, limiting his ability to stabilize himself and increasing the physical effort required to maneuver safely.This prevented him from gripping the bars properly, making it harder for him to maintain balance while sitting and standing. The lack of proper access to this essential support feature increased his discomfort and instability, making the restroom experience frustrating and physically taxing. As a result, he does not feel inclined to visit the restaurant again.

45.13.   Uneven Wooden Floor in the Outdoor Area: Outside the restaurant, Mr. Uriel noticed that the wooden flooring was uneven and had raised sections, creating a hazardous surface. Navigating this area with his walker was difficult, as the instability of the ground forced him to exert extra effort to maintain balance. The vibrations and sudden jolts caused by the uneven planks worsened his joint pain and made walking uncomfortable. This negative experience has left him reluctant to return to the establishment.

45.14.   The barriers on Full Moon could be eliminated by repairing and leveling the cracked and uneven pavement on sidewalks to ensure a smooth and stable surface. The deteriorated parking lot should be resurfaced to remove holes and irregularities, facilitating safer movement. A designated and clearly marked accessible route from the parking lot to the restaurant must be established to guide

safe passage. The blue trash bins obstructing the access route should be relocated to prevent unnecessary detours. Inside, the table layout must be adjusted to allow adequate circulation space, ensuring comfortable movement with mobility aids. Tables with low support bars should be redesigned or replaced to eliminate foot obstructions and improve seating comfort. The wooden bar should be modified to a lower and deeper design to provide proper accessibility. The restroom door must be replaced or adjusted to reduce weight, making it easier to open. The interior space of the restroom should be reconfigured to allow sufficient room for maneuvering with a walker. The trash bin blocking toilet access must be repositioned, and the toilet paper dispenser should be relocated to ensure the support bar remains fully accessible. Finally, the outdoor wooden floor needs repair to eliminate raised sections and create a stable walking surface. Implementing these measures effectively enhances accessibility and comfort throughout the establishment.

45.15.    The Municipality of Salinas has failed to enforce accessibility regulations by granting improper use permits that allow Full Moon Restaurant, located within the Vista Bahía Hotel, to operate without ensuring proper access. As a result, Mr. Uriel Sepúlveda faces significant barriers that prevent him from entering and enjoying the establishment. This lack of enforcement directly affects his ability to access the restaurant, limiting his freedom of movement and excluding him from a space he should be able to visit without restrictions.

**E.  The Failure of the Municipalities of Yauco and Salinas to Ensure Accessibility in Public Spaces**

46.     The Municipalities of Yauco and Salinas have continuously failed to address the accessibility barriers that prevent Mr. Uriel Sepúlveda Alicea from moving safely and independently within these communities. The sidewalks and curb ramps throughout both municipalities, including those adjacent to the co-defendant establishments in this Complaint, are in severe disrepair. These essential pathways, which should be accessible to individuals with disabilities, instead have cracks, uneven surfaces, obstructions caused by illegally parked vehicles, and overgrown vegetation, making it nearly impossible for Mr. Sepúlveda to navigate them using his walker.

47.     Mr. Sepúlveda has encountered numerous difficulties when attempting to move around the Municipality of Yauco and Salinas, which have hindered his ability to engage in daily activities. Despite his reliance on a walker for mobility, the lack of proper infrastructure has left him feeling unsafe and excluded. The poor condition of the sidewalks, ramps, and other public spaces in these municipalities exacerbates his physical limitations, causing unnecessary pain and fatigue as he attempts to move through these areas. These persistent barriers have caused significant emotional and physical distress, further limiting his ability to access businesses, essential services, and public spaces on equal terms with others.

48.     Additionally, the lack of proper landing areas and the unsafe transitions between curb ramps and the roadway further obstruct Mr. Sepúlveda's movement, often forcing him to resort to dangerous alternatives just to reach his destination. As a person with multiple musculoskeletal conditions, including a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis, Mr. Sepúlveda relies on stable and accessible infrastructure to navigate public spaces. However, the

Municipalities of Yauco and Salinas have failed to maintain their sidewalks and curb ramps, creating significant barriers that prevent him from accessing businesses, services, and public spaces in the same manner as individuals without disabilities.

49. Despite its responsibility to ensure accessibility, the Municipalities of Yauco and Salinas have failed to enforce proper maintenance and compliance with the Americans with Disabilities Act (ADA) and other applicable accessibility standards. Their inaction has not only rendered public sidewalks inaccessible but has also significantly obstructed Mr. Uriel Sepúlveda Alicea's ability to navigate these municipalities safely and independently, forcing him to avoid entire areas due to their hazardous conditions. As a person with multiple musculoskeletal conditions, including a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis, Mr. Sepúlveda relies on a walker for mobility and faces daily challenges caused by the Municipalities of Yauco and Salinas' failure to provide safe, accessible pedestrian routes, effectively restricting his freedom of movement and full participation in public life.

50. The Municipalities of Yauco and Salinas have also failed to regulate parking violations, allowing vehicles to obstruct curb ramps and pedestrian pathways, further limiting Mr. Uriel Sepúlveda Alicea's ability to move freely and safely. Despite the clear need to implement and enforce parking restrictions, local authorities have neglected to install proper signage, impose penalties, or take corrective measures to prevent illegal parking in these critical areas. As a result, Mr. Sepúlveda often finds himself unable to access businesses, sidewalks, and public spaces, forcing him to alter his plans, take unsafe routes, or abandon visits altogether. This failure to address illegal parking exacerbates the

already significant accessibility barriers he faces, further restricting his independence and full participation in the community.

51.    This pattern of inaction extends beyond sidewalks and parking areas to the co-defendant establishments identified in this Complaint, which Mr. Uriel Sepúlveda Alicea has considered visiting. Many of these businesses fail to provide accessible entry routes, as they are surrounded by damaged sidewalks, narrow pathways, and improperly designed curb ramps, all of which create dangerous conditions for individuals with mobility impairments. These barriers include cracked and uneven pavement, missing or deteriorated curb ramps, obstructions caused by overgrown vegetation, sidewalks rendered impassable due to vehicles illegally parked on pedestrian pathways, and gravel or rocky surfaces in parking areas that make mobility extremely difficult. Additionally, the lack of proper landing areas and abrupt changes in elevation between sidewalks and roadways further hinder safe mobility for individuals who rely on assistive devices such as walkers. Other barriers Mr. Sepúlveda has encountered include excessively high counters that prevent independent transactions, cramped and obstructed restrooms with improperly placed grab bars, entrances with steps or heavy doors that limit access, tables with restrictive support bars, narrow aisles that hinder movement, and inaccessible seating areas with high stools or inadequate space for a walker. The deterioration of access ramps, inadequate vertical signage in accessible parking spaces, and the lack of designated accessible routes from parking areas further exacerbate these accessibility issues. This widespread failure to provide safe and accessible infrastructure significantly restricts Mr. Sepúlveda's ability to navigate these spaces independently, forcing him to alter his plans, take unsafe routes, or avoid these establishments altogether.

52.   The Municipalities of Yauco and Salinas have long been aware of these conditions but have neglected to require businesses to comply with accessibility laws. This lack of enforcement has allowed these businesses to continue operating without ensuring safe and accessible entry for individuals like Mr. Uriel Sepúlveda Alicea. As a result, he is often forced to take unsafe alternative routes, exert excessive physical effort to navigate these hazardous conditions, or abandon his visits altogether. The continued failure to address these accessibility barriers denies Mr. Sepúlveda the same freedom of movement and community participation available to individuals without disabilities, reinforcing a discriminatory and exclusionary environment within these municipalities.

53.   By knowingly allowing these barriers to persist, the Municipalities of Yauco and Salinas have systematically denied Mr. Uriel Sepúlveda Alicea equal access to public spaces. Their failure to maintain sidewalks, regulate parking, and enforce accessibility standards at the co-defendant establishments demonstrates a blatant disregard for the rights and safety of individuals with disabilities. The presence of cracked and uneven sidewalks, missing or improperly designed curb ramps, obstructions from illegally parked vehicles, overgrown vegetation, gravel or unstable surfaces in parking areas, and deteriorated access ramps significantly hinders Mr. Sepúlveda's ability to navigate these municipalities safely and independently. Additionally, businesses continue to operate without providing accessible entry routes, further exacerbating the exclusion he experiences. The combination of these systemic failures effectively prevents him from accessing businesses, services, and public spaces under the same conditions as individuals without disabilities, perpetuating a discriminatory and exclusionary environment.

54.     The continued inaction of the Municipalities of Yauco and Salinas constitutes a failure to fulfill their legal obligation to ensure accessibility, leaving Mr. Uriel Sepúlveda Alicea at a constant and unjust disadvantage. By neglecting to maintain sidewalks, regulate illegal parking, and enforce accessibility standards at the co-defendant establishments, these municipalities have created an environment where individuals with disabilities are systematically excluded from fully participating in public life. This persistent failure not only violates federal accessibility laws but also reinforces barriers that prevent Mr. Sepúlveda from moving safely and independently within his own community.

**F. Violations of Title III of the Americans with Disabilities Act (ADA) by Places of Public Accommodation**

55.     The defendants Luis A. Velez Cruz; Qlantro LLC; B.V. Properties Inc.; El Meson De Felipe, Inc.; Supermercado Mr. Special, Inc.; Viktor Pollo, LLC; Supermercado Napo Velez Cash & Carry Inc.; Supermercado Agueybana, Inc.; Willies Bar And Restaurant LLC; Flor Amelia Inc.; RMFS Corporation; A Salir, Inc.; and WV Destination PR LLC (hereinafter, "Co-Defendants"), identified in this Complaint as operators of places of public accommodation, are subject to the requirements of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., which mandates ensuring accessibility and equitable participation for individuals with disabilities in their facilities.

56.     Despite this legal obligation, these defendants, with the tacit approval of the Municipalities of Yauco and Salinas, continue to operate in violation of the ADA by failing to provide safe and accessible entry to their establishments.

57.     The Co-Defendants have failed to comply with the ADA by maintaining architectural barriers that prevent Mr. Uriel Sepúlveda Alicea from freely accessing their facilities. These violations include, but are not limited to:

57.1.    Lack of properly designated accessible parking spaces, including van-accessible spaces, failing to meet ADA parking standards.

57.2.    Absence of clear signage for accessible parking, allowing unauthorized vehicles to occupy these spaces, further restricting access.

57.3.    Damaged or improperly designed parking lots, with excessive slopes, cracks, potholes, and moisture accumulation, making it unsafe or impossible for individuals using mobility aids to navigate.

57.4.    Entrances with steps and no ramps, completely barring independent access to establishments for individuals who rely on mobility devices.

57.5.    Unmarked or poorly designed ramps, failing to provide a safe and functional alternative to stairs.

57.6.    Unstable flooring with loose stones, creating hazardous conditions that make it difficult for individuals using mobility devices to move safely.

57.7.    Illegally placed structures, such as posts and columns, obstructing interior spaces and preventing individuals from maneuvering freely.

57.8.    Excessively high service counters, restricting Mr. Sepúlveda's ability to interact with staff or complete transactions independently due to his reliance on a walker.

57.9.    Counters lacking adequate depth, preventing a frontal approach for individuals with mobility disabilities, forcing them to remain at an uncomfortable distance.

57.10.    Excessively high bar and transaction counters, further limiting the ability of individuals with mobility impairments to receive service.

57.11.   Obstructed pathways inside and outside the establishments, including narrow aisles, improperly placed furniture, and obstacles such as trash bins, further limiting accessibility.

57.12.   Inaccessible dining areas, where tables lack adequate knee clearance or are positioned in ways that prevent individuals using mobility devices from seating comfortably.

57.13.   Inaccessible terraces and outdoor seating areas, where the arrangement of tables and flooring design prevents individuals using wheelchairs from accessing these spaces.

57.14.   Restrooms that are completely inaccessible, either due to narrow doors, lack of maneuvering space, missing grab bars, or improper height of restroom fixtures.

57.15.   Lack of clear signage for accessible restrooms, forcing individuals with mobility impairments to search for suitable facilities, leading to excessive fatigue and discomfort.

57.16.   Limited interior space, with furniture and other obstacles preventing individuals with mobility disabilities from comfortably moving around and accessing services.

58.   These barriers, among others, prevent Mr. Uriel Sepúlveda Alicea from enjoying equal access to these establishments, effectively excluding him from fully participating in his community. The Co-Defendants' failure to remove these obstacles demonstrates a clear violation of their obligations under the ADA.

59.   The lack of enforcement by the Municipalities of Yauco and Salinas has resulted in the creation of widespread architectural barriers that severely impact individuals with

mobility impairments, including Mr. Uriel Sepúlveda Alicea, who is often forced to navigate unsafe conditions, alter his plans, or avoid these businesses altogether. As a result, he is deprived of the ability to access essential goods and services available to the general public, reinforcing his exclusion from spaces that should be accessible to all individuals, regardless of their mobility limitations. The continued inaction of the Municipalities of Yauco and Salinas and the Co-Defendants not only violates federal accessibility laws but also perpetuates systemic discrimination against individuals with disabilities, denying them equal opportunities to participate fully in their community.

### G. Violations of Title II of the Americans with Disabilities Act (ADA) by the Municipalities of Yauco and Salinas

60.    The Municipalities of Yauco and Salinas have an affirmative legal duty to ensure that public sidewalks, curb ramps, and pedestrian pathways within their jurisdiction comply with accessibility requirements and remain free from barriers that obstruct individuals with mobility impairments. However, these municipalities have systematically failed to fulfill this obligation, thereby creating an environment that is unsafe, exclusionary, and discriminatory for individuals with disabilities, such as Mr. Uriel Sepúlveda Alicea. This ongoing failure to address and remediate accessibility barriers denies individuals with disabilities equal access to public spaces and services, reinforcing systemic discrimination and restricting their full participation in the community.

61.    The Municipalities of Yauco and Salinas bear direct responsibility for the ongoing maintenance, repair, and regulation of sidewalks and curb ramps throughout their jurisdiction, including those surrounding the Co-Defendant establishments identified in this Complaint, which Mr. Uriel Sepúlveda Alicea has considered visiting. This responsibility extends to ensuring that pedestrian pathways are maintained in an

accessible condition, free from hazardous defects, and that they meet the standards outlined in the 2023 Public Right-of-Way Accessibility Guidelines (PROWAG). However, these municipalities have failed to uphold this duty, allowing accessibility barriers to persist and preventing individuals with mobility impairments from navigating public spaces safely and independently.

62.   Despite this legal obligation, the Municipalities of Yauco and Salinas have allowed public sidewalks and curb ramps to remain in severe disrepair, with broken pavement, cracks, potholes, overgrown vegetation, and abrupt transitions that make them impassable for individuals using walkers or other mobility aids. Additionally, they have failed to regulate illegal parking practices, resulting in vehicles obstructing curb ramps and pedestrian pathways, further restricting Mr. Sepúlveda's ability to navigate these areas independently and safely. This persistent failure to address accessibility barriers not only violates federal accessibility laws but also forces individuals with mobility impairments to endure hazardous conditions, limiting their freedom of movement and full participation in public life.

63.   The lack of enforcement and corrective action by the Municipalities of Yauco and Salinas has subjected Mr. Uriel Sepúlveda Alicea to serious risks to his personal safety, dignity, and mobility. Due to the pervasive inaccessibility of sidewalks, he is frequently forced to take dangerous, unregulated detours, including moving onto the street, where he is directly exposed to vehicular traffic. This places him in immediate danger of being struck by moving vehicles and causes significant physical and emotional distress. Furthermore, the inconsistent and unsafe pedestrian routes prevent him from fully participating in daily activities, such as attending medical appointments, shopping, or engaging in recreational

outings. The continued failure of these municipalities to ensure accessible pedestrian pathways has effectively excluded Mr. Sepúlveda from accessing essential services and public spaces, reinforcing systemic discrimination against individuals with mobility impairments.

64.     The sidewalk system surrounding the Co-Defendant establishments serves as an essential pedestrian route for Mr. Uriel Sepúlveda Alicea and other individuals with disabilities. However, due to the combined negligence of the Municipalities of Yauco and Salinas and the Co-Defendants, this route is entirely unreliable and unsafe. The municipalities' inaction has severely compromised connectivity and pedestrian flow, creating insurmountable obstacles for individuals who rely on mobility aids. As a result, Mr. Sepúlveda is frequently unable to access businesses, services, and public spaces safely and independently, further reinforcing his exclusion from areas that should be fully accessible under the law.

65.     By allowing these barriers to persist, the Municipalities of Yauco and Salinas are in systematic violation of Title II of the ADA, 42 U.S.C. § 12131 et seq., which mandates that public entities ensure accessibility and prohibit discrimination against individuals with disabilities in the provision of services, programs, and activities. The design, maintenance, and enforcement of accessibility standards for public sidewalks and curb ramps constitute a core governmental responsibility under Title II. Therefore, the failure of these municipalities to implement and enforce accessibility regulations constitutes discrimination in a pattern and practice of exclusion, depriving Mr. Uriel Sepúlveda Alicea and others with mobility disabilities of their right to full and equal access to public spaces. This ongoing failure denies them the ability to navigate public areas safely and

independently, reinforcing systemic barriers that prevent their full participation in community life.

### H. Violation of Section 504 of the Rehabilitation Act by the Municipalities of Yauco and Salinas

66. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination on the basis of disability in programs and activities that receive federal financial assistance. As recipients of federal funds, the Municipalities of Yauco and Salinas are legally obligated to ensure accessibility and prevent discrimination against individuals with disabilities in all services, programs, and activities under their jurisdiction, including the maintenance and regulation of public sidewalks, curb ramps, and pedestrian pathways.

67. Despite this clear legal obligation, the Municipalities of Yauco and Salinas have engaged in systemic discrimination by failing to take affirmative actions to remove architectural barriers from their pedestrian infrastructure and by allowing sidewalks to be blocked by illegally parked vehicles. The continued inaction and failure to enforce accessibility regulations have directly resulted in the exclusion of Mr. Uriel Sepúlveda Alicea from a fundamental public service—safe and accessible pedestrian pathways.

68. This failure constitutes a clear violation of Section 504 and reflects intentional discrimination against Mr. Uriel Sepúlveda Alicea based on his disability. The Municipalities of Yauco and Salinas have been fully aware of the hazardous conditions of their sidewalks and curb ramps, including broken pavement, missing landing areas, potholes, cracks, and abrupt level changes, yet have chosen not to take corrective measures. Additionally, they have failed to implement parking enforcement policies, allowing vehicles to illegally obstruct designated pedestrian access points, curb ramps,

and sidewalks, further restricting Mr. Sepúlveda's ability to navigate his community safely.

69.    By allowing these barriers to persist, the Municipalities of Yauco and Salinas have effectively denied Mr. Uriel Sepúlveda Alicea the use and enjoyment of public spaces, in direct violation of Section 504. Their failure to ensure compliance with federal accessibility standards has forced Mr. Sepúlveda to either risk injury by navigating hazardous pedestrian routes or remain confined to his home, thereby depriving him of his right to participate in everyday community life on equal terms with others.

**I.    Use Permits Granted in Violation of Accessibility Laws**

70.    The Municipalities of Yauco and Salinas have systematically granted and maintained use permits for the Co-Defendants identified in this Complaint, despite their failure to comply with accessibility laws. As a result, these establishments have been allowed to operate despite the existence of significant architectural barriers that prevent individuals with disabilities, such as Mr. Uriel Sepúlveda Alicea, from accessing their facilities safely and independently. This institutionalized practice of non-compliance has resulted in the issuance of permits based on false or incomplete information, leading to the continued operation of establishments that do not meet the legal standards for accessibility.

71.    Specifically, the Co-Defendants identified in this Complaint failed to meet accessibility requirements at the time of their permit applications and continue to operate in violation of the law, as follows:

71.1.    The Co-Defendants fraudulently certified that their establishments had accessible entrances and routes, yet they maintain permanent obstacles that prevent individuals with disabilities from safely accessing them.

71.2.    In their permit applications, the Co-Defendants misrepresented that they provided the legally required maneuvering space for individuals using mobility aids, when the actual space is significantly smaller than the minimum legal requirement, making it impossible for Mr. Uriel Sepúlveda Alicea to move freely.

71.3.    The Co-Defendants concealed the fact that their service counters exceed the legally permitted height for accessibility, making them inadequate and unusable for individuals with mobility impairments, such as Mr. Sepúlveda.

71.4.    The permit applications falsely certified that the restroom facilities met accessibility requirements, yet in reality, these establishments lack sufficient maneuvering space, have improperly installed grab bars, and place obstacles such as trash bins that further limit accessibility.

71.5.    The Co-Defendants failed to disclose that they use their parking areas in ways that obstruct access routes, eliminating accessible paths and forcing individuals with disabilities to move onto hazardous terrain, thereby placing them in direct danger.

71.6.    The Co-Defendants misrepresented compliance with accessible parking requirements, failing to provide the correct number of accessible spaces, failing to designate van-accessible spaces, and neglecting to install proper signage and markings, creating additional barriers that prevent safe and independent access.

72.    Additionally, the Co-Defendants continue to maintain significant accessibility barriers in violation of the ADA, including but not limited to:

72.1.    Lack of properly designated accessible parking spaces, including van-accessible spaces, failing to meet ADA parking standards.

72.2.   Absence of clear signage for accessible parking, allowing unauthorized vehicles to occupy these spaces, further restricting access.

72.3.   Damaged or improperly designed parking lots, with excessive slopes, cracks, potholes, and moisture accumulation, making it unsafe or impossible for individuals using mobility aids to navigate.

72.4.   Entrances with steps and no ramps, completely barring independent access to establishments for individuals who rely on mobility devices.

72.5.   Unmarked or poorly designed ramps, failing to provide a safe and functional alternative to stairs.

72.6.   Unstable flooring with loose stones, creating hazardous conditions that make it difficult for individuals using mobility devices to move safely.

72.7.   Illegally placed structures, such as posts and columns, obstructing interior spaces and preventing individuals from maneuvering freely.

72.8.   Excessively high service counters, restricting Mr. Sepúlveda's ability to interact with staff or complete transactions independently due to his reliance on a walker.

72.9.   Counters lacking adequate depth, preventing a frontal approach for individuals with mobility disabilities, forcing them to remain at an uncomfortable distance.

72.10.  Excessively high bar and transaction counters, further limiting the ability of individuals with mobility impairments to receive service.

72.11.  Obstructed pathways inside and outside the establishments, including narrow aisles, improperly placed furniture, and obstacles such as trash bins, further limiting accessibility.

72.12.    Inaccessible dining areas, where tables lack adequate knee clearance or are positioned in ways that prevent individuals using mobility devices from seating comfortably.

72.13.    Inaccessible terraces and outdoor seating areas, where the arrangement of tables and flooring design prevents individuals using wheelchairs from accessing these spaces.

72.14.    Restrooms that are completely inaccessible, either due to narrow doors, lack of maneuvering space, missing grab bars, or improper height of restroom fixtures.

72.15.    Lack of clear signage for accessible restrooms, forcing individuals with mobility impairments to search for suitable facilities, leading to excessive fatigue and discomfort.

72.16.    Limited interior space, with furniture and other obstacles preventing individuals with mobility disabilities from comfortably moving around and accessing services.

73.    By falsely certifying compliance with accessibility requirements and maintaining these barriers, the Co-Defendants continue to operate in direct violation of the ADA, depriving Mr. Sepúlveda of his right to equal access and participation in public spaces.

74.    The Municipalities of Yauco and Salinas have granted use permits without conducting proper inspections to verify compliance with accessibility laws, allowing the Co-Defendants to continue operating despite their failure to provide accessible entrances, paths of travel, parking, and service areas.

75.    The Municipalities of Yauco and Salinas have demonstrated a pattern of negligence in their duty to enforce accessibility laws. Rather than ensuring that the Co-Defendants comply with the law before issuing permits, the Municipalities have:

75.1.    Failed to conduct adequate inspections before granting use permits, allowing businesses with clear accessibility violations to continue operating.

75.2.    Ignored the poor condition of access routes and the lack of compliance with accessibility standards, further exacerbating the mobility barriers faced by Mr. Uriel Sepúlveda Alicea and others with disabilities.

75.3.    Failed to implement penalties or fines against businesses that obstruct access routes, fail to provide proper accessible parking, or operate without meeting basic accessibility standards.

76.    Not only have the Municipalities of Yauco and Salinas granted use permits to the Co-Defendants identified in this Complaint without verifying compliance with accessibility laws, but they have also failed to implement enforcement mechanisms to correct these violations. The Municipalities are fully aware that many of these businesses operate with significant architectural barriers and continue to deny equal access to individuals with mobility impairments, yet they have chosen not to take action to address these issues.

77.    The number of enforcement actions or fines issued for violations related to accessibility barriers is virtually nonexistent, reflecting a complete lack of commitment to ensuring compliance with accessibility laws. Instead of protecting the rights of individuals with disabilities, the Municipalities of Yauco and Salinas have prioritized the convenience of businesses, allowing the continued operation of non-compliant establishments at the

expense of accessibility. This has led to severe consequences for individuals like Mr. Uriel Sepúlveda Alicea, who faces immense difficulties in navigating these areas safely.

78. The use permits granted to the Co-Defendants identified in this Complaint are null and void, as they were obtained based on false or incomplete information regarding accessibility compliance. These businesses failed to disclose material information about existing architectural barriers, and the Municipalities of Yauco and Salinas failed in their duty to verify compliance before issuing permits.

79. Therefore, the plaintiff respectfully requests that the Court, after completing the requisite procedural steps, order the immediate revocation of these use permits and mandate the correction of all existing accessibility barriers within and around the Co-Defendants' establishments. Additionally, the Municipalities of Yauco and Salinas must be required to implement proper oversight and enforcement mechanisms to ensure that all public accommodations comply with accessibility laws, thereby preventing further discrimination against individuals with disabilities, including Mr. Uriel Sepúlveda Alicea.

80. Mr. Uriel Sepúlveda Alicea has suffered concrete economic damages as a direct result of the inaccessible pedestrian infrastructure throughout Yauco and Salinas. Due to the pervasive barriers in the sidewalks, crosswalks, and curb ramps, Mr. Sepúlveda has been forced to rely on vehicular transportation for even short distances that he could otherwise navigate independently with his walker if proper accessibility were maintained.mOn numerous occasions throughout 2024 and early 2025, Mr. Sepúlveda attempted to access various locations in both municipalities using the public sidewalk system, only to encounter impassable barriers that prevented him from completing his journey. These barriers included cracked and uneven pavement, missing or inadequate curb cuts,

excessive slopes, dangerous lips at transitions between surfaces, and accumulated water and debris. After repeatedly encountering these obstacles, Mr. Sepúlveda has been compelled to use his car to travel even short distances within the municipalities. This unnecessary reliance on automotive transportation has resulted in quantifiable economic harm through increased fuel consumption and vehicle wear and tear.

81. Beyond the direct financial impact, Mr. Sepúlveda has experienced reduced independence, as he must coordinate transportation when his physical condition would otherwise allow him to travel freely on accessible pedestrian routes. The inaccessible pedestrian infrastructure has effectively imposed a "disability tax" on Mr. Sepúlveda, forcing him to incur expenses that non-disabled residents do not face for the same basic community access.The economic burden and loss of independence that Mr. Sepúlveda has experienced are direct consequences of the Municipalities' failure to maintain accessible public rights-of-way as required by the ADA and Rehabilitation Act.

82. This lawsuit emerges from the tangible and persistent discrimination that Mr. Uriel Sepulveda Alicea faces daily in the streets, sidewalks, and businesses of Yauco and Salinas. The allegations presented demonstrates that Mr. Sepulveda has suffered concrete, particularized injuries as a direct result of the defendants' failures to comply with Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

83. Mr. Sepulveda's injuries are not theoretical or abstract—they are immediate and ongoing. He has provided specific, documented instances where his ability to navigate these communities has been severely restricted. At Cafeteria y Barra El Punto de Efi, he encountered deteriorated pavement filled with cracks that made walking with his walker difficult and exhausting. At Qlantro, he struggled with inaccessible parking, uneven

access ramps, and a restroom with improper grab bars that compromised his ability to use the facilities safely. In Yauco Plaza Shopping Centers, he faced unstable surfaces and inadequate space to maneuver. Throughout both municipalities, he has encountered physical barriers that have caused him pain, discomfort, and in some cases, placed him at risk of physical harm.

84.    These injuries are directly traceable to the defendants' actions and inactions. The municipalities have systematically failed to ensure that sidewalks, curb ramps, and crosswalks are constructed and maintained in compliance with federal accessibility standards. They have granted permits to businesses that openly violate accessibility requirements. The businesses themselves have maintained architectural barriers such as steps without alternative ramps, inaccessible restrooms, and service counters beyond Mr. Sepulveda's reach.

85.    Mr. Sepulveda faces an imminent threat of continued injury. Unlike a past injury that may not recur, the barriers he faces are permanent features of the built environment that he encounters repeatedly as a resident of these communities. His testimony makes clear that he has altered his behavior—avoiding certain areas, taking longer routes, or forgoing visits altogether—specifically due to these barriers. This demonstrates the real, ongoing impact of the defendants' violations on his daily life and independence.

86.    The injuries Mr. Sepulveda has suffered are redressable through this Court's intervention. The removal of physical barriers, implementation of proper oversight mechanisms, and enforcement of accessibility standards would directly address the harm he has experienced. These remedies would restore his ability to navigate his community safely

and independently, access businesses on equal terms with other citizens, and participate fully in community life.

87. Mr. Sepulveda has established all elements required for Article III standing. He has suffered concrete injuries-in-fact through his direct encounters with inaccessible facilities. These injuries are causally connected to the defendants' failure to comply with federal accessibility requirements. And a favorable decision from this Court would remedy these injuries by removing the barriers that currently impede his equal access to public spaces and services.

88. The relief sought is not merely about technical compliance with regulations—it is about securing Mr. Sepulveda's fundamental right to move freely through his community with dignity and independence. Without this Court's intervention, he will continue to face discrimination in the most basic aspects of public life, effectively excluding him from full participation in his community. The ADA and Rehabilitation Act were enacted precisely to prevent this type of systematic exclusion, and this Court has both the authority and the obligation to enforce these crucial civil rights protections.

## IV.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Uriel Sepúlveda Alicea respectfully requests that this Court:

1. Issue a declaratory judgment that the Municipalities of Yauco and Salinas have violated Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by failing to ensure that their facilities, services, programs, and activities are readily accessible to and usable by individuals with disabilities.

2.  Issue a declaratory judgment that the Municipalities of Yauco and Salinas have violated the ADA by failing to conduct a self-evaluation and prepare a transition plan as required by 28 C.F.R. § 35.105 and § 35.150(d).

3.  Issue a preliminary and permanent injunction ordering the Municipalities of Yauco and Salinas to immediately cease removing existing accessibility features, including curb cuts and ramps, and to restore all previously removed accessibility features within 90 days.

4.  Issue a preliminary and permanent injunction ordering the Municipalities of Yauco and Salinas to retain a qualified third-party Accessibility Consultant to conduct a comprehensive assessment of all barriers in the Public Sidewalk System.

5.  Order the Municipalities of Yauco and Salinas to develop and implement a comprehensive Transition Plan that identifies barriers, describes methods for remediation, specifies implementation schedules, designates responsible officials, and establishes grievance procedures.

6.  Order the Municipalities of Yauco and Salinas to create and maintain an accessible barrier reporting system with multiple reporting methods and mandatory response timelines.

7.  Order the Municipalities of Yauco and Salinas to establish an effective ADA grievance procedure and to designate a qualified ADA Coordinator.

8.  Order the Municipalities of Yauco and Salinas to allocate a specific percentage of their annual budgets to accessibility improvements.

9.  Order the Municipalities of Yauco and Salinas to enforce parking regulations to prevent illegal parking practices that obstruct curb ramps and pedestrian pathways.

10. Award nominal damages under Title II of the ADA and Section 504 of the Rehabilitation Act in the amount of $1.00 to Plaintiff Uriel Sepúlveda Alicea.

11. Award economic damages in the amount of $1.00 to Plaintiff Uriel Sepúlveda Alicea for costs incurred due to being forced to use his car instead of traversing safely on public sidewalks.

12. Order all defendants to implement a formal prioritization system for remediation that addresses governmental facilities first, transportation terminals and commercial corridors second, public accommodations third, and residential neighborhoods fourth.

13. Order all defendants to implement a certification program requiring that all new construction, alterations, or repairs to the Public Sidewalk System be inspected and certified by independent licensed Subject Matter Experts.

14. Order all defendants to provide mandatory comprehensive training on ADA requirements for all employees involved in construction, permitting, zoning, or maintenance of public rights-of-way.

15. Order the establishment of a court-appointed monitor to oversee implementation of remediation efforts, verify compliance, review progress reports, and report to the Court.

16. Award reasonable attorneys' fees, litigation expenses, and costs pursuant to applicable federal and Puerto Rico law.

17. Retain jurisdiction over this matter to ensure implementation of all ordered remedies.

18. Impose a progressive penalty structure for missed deadlines or incomplete remediation efforts.

19. Order each defendant to submit quarterly compliance reports to the Court, Plaintiff, and the court-appointed monitor.

20. Order defendants to create a centralized system to document and track all complaints related to accessibility issues.

21. Order the immediate implementation of proper maintenance protocols to ensure that existing accessible features remain usable.

22. Order the development of written policies and procedures for ensuring ADA compliance in all future construction, alteration, and maintenance projects.

23. Order defendants to conduct annual reassessments of remediated areas to ensure continued compliance.

24. Order the creation of an Accessibility Advisory Committee that includes persons with disabilities from Yauco and Salinas to provide input on remediation efforts.

25. Order quarterly status conferences with the Court to assess progress and address implementation issues.

26. Order the development and maintenance of a public-facing website documenting barriers, remediation plans, and progress.

27. Issue a declaratory judgment that the named Co-Defendants have violated Title III of the Americans with Disabilities Act and the Puerto Rico Persons With Disabilities Civil Rights Act by failing to ensure that their facilities are readily accessible to and usable by individuals with disabilities.

28. Order the revocation of all use permits granted to businesses that were obtained based on false or incomplete information regarding accessibility compliance, and require new inspections before reinstatement.

29. Order all business defendants to implement remediation plans to remove architectural barriers within their establishments, including:

    a.   Accessible entrances and paths of travel

    b.   Compliant service counters at accessible heights

    c.   Accessible restroom facilities

    d.   Accessible tables and seating areas

**Dated:** March 19, 2025.

**RESPECTFULLY SUBMITTED.**

**VELEZ LAW GROUP LLC**
Civil Rights Division


s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

4204 Six Forks Rd, Apt 1209
Raleigh, NC 27609-6427

E:      vlg@velezlawgroup.com
C:      (787)-422-1881

**PLAINTIFF'S ATTORNEY**